UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**KASEY D. ALVES**                                                                                    **PLAINTIFF**

**VERSUS**                                                    **CIVIL ACTION NO. 1:06cv912LGJMR**

**HARRISON COUNTY, MISSISSIPPI, BY AND
THROUGH THE BOARD OF SUPERVISORS;
HARRISON COUNTY SHERIFF'S DEPARTMENT;
SHERIFF GEORGE PAYNE, JR.; DAVID DECELLE;
HEALTH ASSURANCE, LLC; REGINA RHODES,
OFFICIALLY AND IN HER INDIVIDUAL CAPACITY;
RYAN TEEL, IN HIS OFFICIAL AND INDIVIDUAL
CAPACITY; DIANNE GATSON-RILEY, OFFICIALLY
AND IN HER INDIVIDUAL CAPACITY; AND UNKNOWN
JOHN AND JANE DOES A-Z, IN THEIR OFFICIAL
AND INDIVIDUAL CAPACITIES**                                                        **DEFENDANTS**

**COMBINED MOTION AND MEMORANDUM OF AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO PRECLUDE THE EXPERT REPORT AND TESTIMONY
OF RONALD G. LYNCH**

COMES NOW Defendant, Sheriff George Payne, Jr. ("Payne"), in his individual and official capacity as Sheriff of Harrison County, also referred to as the Harrison County Sheriff's Department, by and through his attorneys of record, and files this Combined Motion and Memorandum of Authorities in Support of Motion to Preclude the Rule 26 Report and Testimony of Ronald G. Lynch, and in support of said Combined Motion would show unto this Court the following:

**I. INTRODUCTION AND FACTUAL BACKGROUND**

On February 6, 2008, Plaintiff designated as his expert Ronald G. Lynch ("Lynch"). See DN 122. Although Plaintiff's Designation of Experts (DN 122) does not indicate in what capacity Lynch is providing his testimony, his Rule 26 Report ("Report") (DN 122-2) indicates that his opinion is based upon his experience as a law enforcement officer with emphasis upon his tenure as a patrol

officer, accident investigator, homicide investigator, supervisor and commander for the Miami Dade Police Department, Chief of Police, Major in a sheriff's office, and numerous years of training law enforcement officers. See Rule 26 Report, DN 122-2, ¶2. Lynch does not state that his opinions and the basis for them are supported by any experience in the field of Corrections. See id. Since the filing of Lynch's Report, there has been no further supplementation and the according to the Court's deadlines, discovery expired on October 6, 2008. See Order DN 189 and unnumbered Docket Entry - Set Deadlines/Hearings dated July 3, 2008. Thus, no further supplementation of this Report will be allowed. See Local Rule 26.1 (A)(5).

Plaintiff's claims arise out of an incident occurring in the early morning hours of January 7, 2006, where Plaintiff had been arrested by Biloxi Police Officers on the premises of the Imperial Palace Casino and charged with public intoxication, trespassing and disorderly conduct due to Plaintiff's unruly behavior and intoxicated state. Plaintiff was taken to the Harrison County Adult Detention Center ("HCADC") and during the booking process, he refused to comply with the officers' orders, verbal commands and was combative, disorderly and using profanity. Plaintiff was subsequently secured in a restraint chair and placed in a nearby holding cell.

As a result of his restraint, Plaintiff asserts the following claims: 42 U.S.C. § 1983, 14th Amendment Excessive Force claim, 14th Amendment Conspiracy claim, and a Custom/Policy claim. Plaintiff maintains that this Defendant is liable to him for the injuries he sustained as a result of him being restrained and then being placed in the restraint chair. Plaintiff does not allege that Defendant Payne was present or participated in his restraint, but only states that prior to this event there were continuous allegations of excessive force made against Defendants Ryan Teel and Regina Rhodes, and that it was recommended that Teel be terminated due to psychological problems, but no action

was taken. With respect to the conspiracy claim, Plaintiff only alleges that deputies, supervisors and the warden conspired with each other to assault and intimidate detainees and thereafter concealed and covered up said assaults. However, Plaintiff does not allege that Defendant Payne was part of this conspiracy. See Complaint, ¶¶ 7-13.

Plaintiff's allegations against Defendant Payne are specifically contained in Paragraphs 15, 16, and 17 of the Complaint. Plaintiff alleges that during the five (5) year period between 2001 and January 7, 2006, "there existed a persistent widespread practice of deputies, supervisors and the warden assaulting inmates/detainees and to cover up the assaults," and it was "so common and routine as to constitute a custom that fairly represents the Harrison County, Mississippi/Harrison County Sheriff's Department Policy." See Complaint, ¶ 15. Plaintiff further claims that Payne had "actual and/or constructive knowledge of the custom" but did nothing to remedy it, and Plaintiff was injured as a proximate result of that policy. See id. Plaintiff claims that there was "a complete failure to properly supervise the deputies/officers and warden involved, which constituted a deliberate indifference to Plaintiff's constitutional rights." See id. Plaintiff alleges that for the purposes of injuring him, the Sheriff's Department/Payne willfully, wantonly, intentionally and sadistically "violated the constitutionally imposed duty of care toward individuals who are in the custody of the State" and "violated a duty to protect from harm . . .". See Complaint, ¶ 16-17.

## II. THE STANDARD FOR ADMISSIBILITY OF EXPERT WITNESS TESTIMONY

Expert testimony is admissible when the proponent of the testimony demonstrates by a preponderance of evidence that a) the witness is qualified by knowledge, skill, experience, training, or education; b) the testimony is helpful to the trier of fact; and c) the testimony is reliable. Fed. R. Evid. 702; Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998) (en banc); United States

v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004). In determining the reliability of expert testimony, courts consider whether "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; See Fed. R. Evid. 104(a).

### A.    Whether An Expert Witness Is Qualified

The Court must assess whether the particular expert has sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case. See Tanner v. Westbrooker, 174 F.3d 542, 548 (5th Cir. 1999) (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 156 (1999)). The word "knowledge" connotes more than subjective belief or unsupported speculation. See Moore v. Ashland Chem., Inc., 151 F.3d 269, 275 (5th Cir. 1998). To be admissible, an expert's opinion must have a "reliable basis in the knowledge and experience of his discipline." See Allen v. Penn. Eng'g Corp., 102 F.3d 194, 196 (5th Cir. 1996) [emphasis added]. A court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject. See Wilson v. Woods, 163 F.3d 935 (5th Cir. 1999).

### B.    Whether the Expert Testimony is Helpful

Under Rule 702, an expert may give opinion testimony only "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; Pipitone v. Biomatrix, 288 F.3d 239, 245 (5th Cir. 2002). Whether testimony will be helpful is a question of common sense, i.e., can an average juror "determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute[?]." Fed. R. Evid. 702 Advisory Committee's Notes (quoting Ladd, Expert Testimony, 5 Vand. L. Rev. 414, 418

(1952). Opinions that merely tell a jury what result to reach or are in essence a legal argument are not helpful and should be excluded. Fed. R. Evid. 704, Advisory Committee's Notes.

### C. Whether the Expert Testimony is Reliable

Moreover, the court is to act as a "gatekeeper" and admit scientific, technical or other specialized opinion only if it is relevant and reliable. See Kumho Tire, 526 U.S. at 141; Daubert v. Merrill Dow Pharm., Inc., 509 U.S. 579 (1993); Moore, 151 F.3d at 275 ("[The] trial judge must ensure that any all scientific evidence and testimony is not only relevant but reliable.").

The court in Frazier, supra, 387 F.3d at 1260, explained:

> The importance of Daubert's gatekeeping requirement cannot be overstated. As the United States Supreme Court has framed it in Kumho Tire: '[T]he objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field....' The district court's role is especially significant since the expert's opinion can be both powerful and quite misleading because of the difficulty in evaluating it. (citing authorities). Indeed, no other kind of witness is free to pine about a complicated matter without any firsthand knowledge of the facts in the case, and based upon otherwise inadmissible hearsay if the facts or data re "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."

387 F.3d at 1260 (citations omitted).

The burden is on the party offering the expert testimony to establish by a preponderance of the evidence that it is reliable, and therefore admissible. Moore, 151 F.3d at 276; Rothfos Corp. v. M/V Nuevo Leon, 123 F. Supp. 2d 362, 371 (S.D. Tex. 2000); Cook v. Sheriff of Monroe Co., Fl., 402 F.3d 1092, 1107 (11th Cir. 2005) ("The proponent must demonstrate that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will

5

be helpful to the trier of fact"); Frazier, 387 F.3d at 1260 ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion . . .").

In Daubert, the Supreme Court adopted four factors with respect to evaluating the reliability of scientific expert opinion evidence. The "Daubert factors" are: (1) whether the theory or technique has been or can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known potential rate of error of the particular theory or technique, and whether means exist for controlling its operation; and (4) the extent to which the theory or technique has been accepted. Daubert, 509 U.S. at 592-94. The Court has extended the Daubert factors' application beyond scientific opinion to "technical" and "other specialized" opinion, and emphasized that the test of reliability is a flexible one. Kumho Tire Co., 526 U.S. at 141.

> Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.

Id. at 141-142 (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 143 (1997)). Furthermore, the Daubert list was intended to be non-exclusive, and courts continue to consider additional other factors. Id.

The courts have fleshed out circumstances under which a technical expert's testimony should be precluded. Some of the circumstances directly applicable here are:

1. Where an expert assumes false facts in rendering his opinion, it is unreliable. "If the foundational data underlying opinion testimony are unreliable, an expert will not be permitted to base an opinion on that data because any opinion drawn from that data is unreliable." See Guillory v. Domtar Indus., 95 F.3d 1320, 1331 (5th Cir. 1996) (court property excluded expert's opinion because it was based upon incorrect,

      altered facts and speculation designed to bolster the defendant's position); Torch Energy Mktg., No. Civ. A. H-01-3402, 2003 U.S. Dist. LEXIS 20941, at *31 (S.D. Tex. Mar. 31, 2003); In re: Air Crash Disaster, 795 F.2d 1230, 1235 (5th Cir. 1986).

2. Where an expert unquestioningly accepts facts with no independent verification, his opinion is unreliable. As the Daubert court noted: "one very significant fact to be considered is whether an expert is proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." See Daubert v. Merrill Dow Pharm., Inc., 43 F.3d 1311, 1317 (9th Cir. 1993), cert denied, 516 U.S. 869, (1995). "Experts" whose opinions are available to the highest bidder have no place testifying in a court of law. In re: Air Crash Disaster, 795 F.2d 1230 at 1234; Van Blargan v. Williams Hospitality Corp., 754 F. Supp. 246, 250 (D.P.R. 1991). The fact that someone spends substantially all of his time consulting with attorneys and testifying in trials is not a disqualification, but it is not an automatic qualification guaranteeing admission of expert testimony. Tokio Marine & Fire Ins. Co., Ltd. v. Grove Mfg. Co., 958 F.2d 1169, 1175 (D.P.R. 1992).

3. When an expert's opinion is not preceded by facts in evidence but only speculation or conjecture, his opinion is unreliable. Lewis v. Parish of Terrebonne, 894 F.2d 142, 146 (5th Cir. 1990); Benavides v. County of Wilson, 955 F.2d 968, 973 (5th Cir. 1992). An expert's opinion is not reliable when he seeks to support it with nothing more than his "say so" that the opinion is correct. See, Viterbo v. Dow Chem. Co., 826 F.2d 420, 424 (5th Cir. 1987). When the expert "br[ings] to court little more than

his credentials and a subjective opinion," this is not evidence that would support a judgment. Id. at 421, 424. An expert's opinions are likewise inadmissible when the expert "piles speculation upon speculation." Reardon v. Lightpath Tech., Inc., Cause No. 14-03-01208-CV, 2005 WL 2674993, *9 (Tex. App.-Houston [14th Dist.] October 20, 2005, n.p.h.) (not designated for publication); Woods v. Lecureaux, 110 F.3d 1215, 1221 (6th Circ. 1997) (upholding the district court's ruling that excluded expert testimony when the expert merely stacked inference upon inference in reaching his opinion).

4. An expert opinion which is fallacious and illogical on its face must be precluded. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 144 (1997) (the court to consider whether there is "too great an analytical gap" between the data and the opinion).

### D. Rule 403 Limits the Admissibility of Expert Testimony.

Even where the demands of Rule 702 have been satisfied, the admissibility of expert witness testimony can also trigger a Rule 403 analysis by the court. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. As the court stated in Frazier, 387 F.3d at 1263 (citations omitted):

> Because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403. . . . Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse.

As shown below, under the foregoing propositions, Plaintiff's proposed expert testimony must be precluded. Indeed, virtually every proposition set forth above applies to the Report and testimony of Lynch, and compels preclusion.

### III. LYNCH'S OPINIONS

Lynch's Report and intended testimony covers three (3) subjects: 1) whether there existed excessive force in this instance, 2) whether there existed deliberate indifference in the handling of this incident, 3) whether there existed a history of abuse to inmates. See Rule 26 Report (DN 122-2). Defendants would show that Lynch is not qualified as an expert in the areas he has attempted to provide an opinion, his opinions and conclusions will in no way assist the trier of fact and are in effect merely impermissible legal conclusions, and his opinions are clearly unreliable in their entirety. Thus, Lynch's Report and testimony on all of the issues should be precluded.

> **A.   Lynch is not qualified to render his first opinion, nor will it assist the trier of fact, and it is completely unreliable.**

"The first opinion is that *Excessive force was used on the Plaintiff*. This clearly demonstrated by the pictures of the Plaintiff's injuries as shown in the photographs, medical report and Deputies' report involving the Restraint Chair." See Rule 26 Report, DN 122-2.

> **i.   Lynch is not qualified to render this opinion**

As stated in his Report, Lynch asserts that his opinions and the basis for them are founded upon his experiences as a law enforcement officer and with emphasis on his tenure as a patrol officer, accident investigator, homicide investigator, supervisor and commander of a police department, a chief of police, a major and years of training law enforcement officers. See Rule 26 Report, "Opinions and Basis", DN 122-2. Notably absent is that his opinions are based upon any experience in Corrections. See id.

9

Lynch's "experience" lends no credibility to his opinions regarding the appropriate use of force in a Correctional institution, especially that involving a restraint chair. This is confirmed by his lack of litigation consultations involving Corrections. As provided in his CV and attached "HISTORY OF CASES", Lynch states that he has been consulted a total of (5) times regarding Corrections; out of a total of (107) consultations. See Professional Vita attached hereto as **Exhibit "1"**. A review of those (5) cases shows that: one dealt with jailors lack of medical attention to an inmate (Smith v. Maricopa County, Arizona); another case dealt with a correctional officer with a history of violence who beat an inmate (Allen v. Miami-Dade), Lynch was never deposed on these issues and did not attend trial; the next two cases appear to be the very same case, but with separate opinions regarding a hog tied mental prisoner and use of taser (Burkett v Alachua County Sheriff), Lynch does not indicate whether he was deposed or if he testified at trial; and the last case listed by Lynch is this case (Alces (sic) v. Harrison County). See Professional Vita, "HISTORY OF CASES", attached hereto as Exhibit "1".[1]

Out of the (5) Corrections related cases that Lynch was consulted on, besides this case, only (2) could arguably be related to Corrections, and related uses of force. The remainder of Lynch's case consultations, some 100+, relate to his experience in general law enforcement practices. Lynch's education, experience and prior consultations, clearly show that his qualifications to testify as an expert are in general law enforcement practices, not Corrections. Again, to be admissible, an expert's opinion must have a "reliable basis in the knowledge and experience of his discipline." See Allen v. Penn. Eng'g Corp., 102 F.3d 194, 196 (5th Cir. 1996) [emphasis added]. A court should

---

[1] Even though Lynch might have been consulted on these few cases, there is no indication that he has ever been qualified as an expert in the field of Corrections.

refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject. See Wilson v. Woods, 163 F.3d 935 (5th Cir. 1999). In this case, Lynch's knowledge and experience are in the discipline of general law enforcement and not in the area of Corrections. As such, he is not qualified to testify in this matter.

### ii. Lynch's opinion will not assist the trier of fact

Lynch opines that "*Excessive force was used on the Plaintiff*" and that the "pictures of the Plaintiff's injuries as shown in the photographs, the medical report and Deputies' report involving the Restraint Chair," demonstrate this alleged excessive force. Certainly an average juror in this case could (in review of the very same evidence) determine intelligently and to the best possible degree the particular issue without any enlightenment from Lynch. See Fed. R. Evid. 702 Advisory Committee's Notes (quoting Ladd, Expert Testimony, 5 Vand. L. Rev. 414, 418 (1952). Lynch's opinion merely attempts to tell the jury what result to reach, and is in essence a legal argument, which is not helpful and should be excluded. Fed. R. Evid. 704, Advisory Committee's Notes.

### iii. Lynch's opinion is not reliable

The Committee Note to the 2000 Amendments of Rule 702 expressly says that, "if the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial Court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702 advisory committee's note (2000 amends.) (emphasis added); see also Daubert v. Merrell Dow Pharmaceuticals, Inc. (on remand), 43 F.3d 1311, 1316 (9th Cir. 1995) (observing that the gatekeeping role requires a district court to make a reliability inquiry, and that "the expert's bald assurance of validity is not enough").

If admissibility could be established merely by the ipse dixit of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong.

In this case, Lynch's first opinion lacks sufficient indicia of reliability. There is simply no way to determine the reliability of his opinion, as it is clear that Lynch did not engage in any systematic or reliable method to arrive at his opinion. Merely stating that there was "*Excessive Force*", with no further application of Lynch's experience and application to the facts (any facts) is insufficient. An expert's opinion is not reliable when he seeks to support it with nothing more than his "say so" that the opinion is correct. See Viterbo v. Dow Chem. Co., 826 F.2d 420, 424 (5th Cir. 1987). When the expert "br[ings] to court little more than his credentials and a subjective opinion," this is not evidence that would support a judgment. Id. at 421, 424.

Lynch has clearly failed to meet his burden of reliability pursuant to Fed. R. Evid. 702, and as further pronounced in Daubert and Kumho Tire, *supra*, by failing to show that his opinion is based upon sufficient facts or data, that his opinion is the product of reliable principles and methods, and that he has in any way applied the principles and methods reliably to the facts of this case. Lynch offers little more than personal assurances based upon his mere "police experience" that his conclusions are so, but fails to offer any factual support and reliable methodology. This opinion must therefore be excluded.

### B.   Lynch is not qualified to render his second opinion, nor will it assist the trier of fact, and it is completely unreliable.

"The second opinion is that the role of the Center is to provide proper care, custody and control of its inmates. In this incident the excessive force, failure to provide proper care for his injuries and the conspiracy of lying by Agency personnel shows a deliberate indifference in the handling of this incident. Such indifference is further shown by the intervention of the Federal Court and arrest and conviction of the guards." See Rule 26 Report, DN 122-2.

Lynch's second opinion fails for the very same reasons as his first. Specifically, Lynch is not

qualified to testify as to matters related to Correctional institutions, and certainly not the "role of the Center" and the "provid[ing] of proper care for his injuries . . .". As provided in his Report and CV, nothing in his education and experience would indicate that he is qualified to testify as to these matters.

Next, without any educational or experience justification, factual analysis, or methodology whatsoever, Lynch simply claims that "the conspiracy of lying by Agency personnel shows a deliberate indifference in the handling of this incident." Lynch states that his support for this opinion is "shown by the intervention of the Federal Court and arrest and conviction of the guards." In this second opinion, Lynch's has not provided any foundational explanation for this absurdly unreliable opinion. While Lynch claims to have used certain "Data" to formulate his opinions, he does not specifically point to any such data for this opinion, nor does he offer any sufficient facts or reliable methodology. A Court can exclude an expert opinion if the expert has not adequately explained the bases for the opinion. See Rosado v. Deters, 5 F.3d 119, 124 (5th Cir. 1993). "[T]he existence of sufficient facts and a reliable methodology is in all instances mandatory." Hathaway v. Bazany, 507 F.3d 312, 318 (5th Cir. Ct. App. 2007). Lynch's second opinion is clearly insufficient and should be excluded. Additionally, Lynch's second opinion will not assist the Court or the trier of fact in understanding the evidence, and is offered merely as an effort to usurp the role of the Court and the jury by stating erroneous legal conclusions. See Wyeth v. Rowan Companies, Inc., 2008 U.S. Dist. LEXIS 65160 *3 (E.D. La. 2008); and **IV.**, *infra*. Lynch's opinion merely attempts to tell the jury what result to reach, and is in essence a legal argument, which is not helpful and should be excluded. Fed. R. Evid. 704, Advisory Committee's Notes.

To the extent that Lynch relies upon certain newspaper articles to form his opinion, which

pertain to and report on the U.S. Department of Justice's investigation of the HCADC, and the indictments, guilty pleas, and other civil proceedings of former Harrison County Sheriff's Department officers, and which is otherwise relied upon by Lynch to show that there was a deliberate indifference of handling this incident; Defendant would show that this evidence is inadmissible hearsay and is not sufficient data upon which Lynch may rely upon in order to formulate his opinion, particularly because newspaper articles are not proper evidence to prove the truth of the facts that they report because they are inadmissible hearsay.  See James v. Tex. Collin County, 535 F.3d 365, 374 (5th Cir. 2008) (citing Roberts v. City of Shreveport, 397 F.3d 287, 295 (5th Cir. 2005)).  As to the remaining "Data" that Lynch used to form his opinions, including but not limited to the Transcript of Deputy Stolz dated April 3, 2006, Order of Federal Court reference suit against County, and Grand Jury charges against Ryan Teel, this data also is inadmissible hearsay and is therefore unreliable.  See Fed. R. Evid. 801(c).

> **C. Lynch is not qualified to render his third opinion, nor will it assist the trier of fact, and it is completely unreliable**

> "My third opinion is that *there was a history of abuse to inmates*.  This is demonstrated by the guilty pleas of the deputies, the false reports and the failure to follow the Agency and reasonable standards on how to treat inmates.  This demonstrated by the use of the restraint chair for some eight hours when the General Order concerning such use is closer to reasonable care and custody."

Lynch's third opinion fails for the very same reasons as his first and second.  Specifically, Lynch is not qualified to testify as to whether or not there was a "*history of abuse to inmates*." As provided in his Report and CV, nothing in his education and experience would indicate that he is qualified to testify as to these matters, nor does he offer any explanation of how he is qualified to testify as such.

14

Next, without any educational or experience justification, factual analysis, or methodology whatsoever, Lynch simply claims that the support for this opinion is "demonstrated by the guilty pleas of the deputies, the false reports and the failure to follow the Agency and reasonable standards on how to treat inmates." It is first notable that the "Data" that Lynch used to form his opinions, does not even include "the guilty pleas" of any deputy, or otherwise identify any "false reports." Despite this glaring flaw, Lynch has again not provided any foundational explanation for this absurdly unreliable opinion. While Lynch claims to have used certain "Data" to formulate his opinions, he does not specifically point to any such data for this opinion, nor does he offer any sufficient facts or reliable methodology. Again, a Court can exclude an expert opinion if the expert has not adequately explained the bases for the opinion. See Rosado v. Deters, 5 F.3d 119, 124 (5th Cir. 1993). "[T]he existence of sufficient facts and a reliable methodology is in all instances mandatory." Hathaway v. Bazany, 507 F.3d 312, 318 (5th Cir. Ct. App. 2007). Lynch's third opinion is clearly insufficient and should be excluded. Additionally, Lynch's second opinion will not assist the Court or the trier of fact in understanding the evidence, and is offered merely as an effort to usurp the role of the Court and the jury by stating erroneous legal conclusions. See Wyeth v. Rowan Companies, Inc., 2008 U.S. Dist. LEXIS 65160 *3 (E.D. La. 2008); and **IV.**, *infra*. Lynch's opinion merely attempts to tell the jury what result to reach, and is in essence a legal argument, which is not helpful and should be excluded. Fed. R. Evid. 704, Advisory Committee's Notes.

Again, to the extent that Lynch relies upon certain newspaper articles to form his opinion, which pertain to and report on the U.S. Department of Justice's investigation of the HCADC, and the indictments, guilty pleas, and other civil proceedings of former Harrison County Sheriff's Department officers, and which is otherwise relied upon by Lynch to show that there was a history

of abuse against detainees by jailers; Defendants would show that this evidence is inadmissible hearsay and is not sufficient data upon which Lynch may rely upon in order to formulate his opinion, particularly because newspaper articles are not proper evidence to prove the truth of the facts that they report because they are inadmissible hearsay. See James v. Tex. Collin County, 535 F.3d 365, 374 (5th Cir. 2008) (citing Roberts v. City of Shreveport, 397 F.3d 287, 295 (5th Cir. 2005)).

As to the remaining "Data" that Lynch used to form his opinions, including but not limited to the Transcript of Deputy Stolz dated April 3, 2006, Order of Federal Court reference suit against County, and Grand Jury charges against Ryan Teel, this data also is inadmissible hearsay and is therefore unreliable. See Fed. R. Evid. 801(c). Where an expert unquestioningly accepts facts with no independent verification, his opinion is unreliable. As the Daubert court noted: "one very significant fact to be considered is whether an expert is proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." See Daubert v. Merrill Dow Pharm., Inc., 43 F.3d 1311, 1317 (9th Cir. 1993), cert denied, 516 U.S. 869, (1995).

### IV.    ALL OF LYNCH'S OPINIONS AMOUNT TO NOTHING MORE THAN INADMISSIBLE LEGAL CONCLUSIONS

Defendants would show that an expert is not permitted to testify about the law because there is but one expert on the law in each case, the judge. See Askanase v. Fatjo, 130 F.3d 657, 672 (5th Cir. 1997). Legal conclusions by expert witnesses do not assist the trier of fact and are improper and are inadmissible. See, generally, Snap-Drape v. Comm'r of Internal Revenue, 98 F.3d 194, 198 (5th Cir. 1996); Allread v. City of Grenada, 988 F.2d 1425, 1436-37 (5th Cir. 1993); Owen v. Kerr-McGee Corporation, 698 F.2d 236, 240 (5th Cir. 1983); Wyeth v. Rowan Companies, Inc., 2008 U.S. Dist. LEXIS 65160 (E.D. La. 2008); Perez v. City of Austin, 2008 U.S. Dist. LEXIS 36776 *18-19

(W.D. Tex. 2008). The Fifth Circuit has routinely held that experts should be precluded from offering legal conclusions and opinions.

While the Federal Rules allow an expert witness to testify on an ultimate issue to be decided by the trier of fact (See Fed. R. Evid. 704), there is a distinction between offering an opinion as to determinative facts, and offering legal conclusions that simply tells the jury how to decide. See Morris v. Equifax Inf. Svcs., 2007 U.S. Dist. LEXIS 26319 (S.D. Tex. 2007). In the context of a 42 U.S.C. § 1983 claim against a police officer, the Court in Cabaniss v. City of Riverside, et al., 497 F.Supp. 2d 862 (S.D. Ohio 2006) sustained the Defendant's Motion to Strike plaintiff's expert opinions, when the expert merely provided conclusory legal opinions regarding "deliberate indifference". See Cabaniss, 497 F.Supp. 2d at 877-880; See also Hayward v. Landry, et al., 2006 U.S. Dist. LEXIS 97262 *4 (M.D. La. 2006) (citing Berry v. City of Detroit, 25 F.3d 1342, 1353-1354 (6th Cir. 1994)), stating that "'probable cause' is a legal term, and that only the court may define a legal terms for the jury.). The Cabaniss Court found that Plaintiff's expert "merely set forth his conclusory assertion about an ultimate legal issue, rather than setting forth facts which 'outline a line of reasoning arising from a logical foundation.'" Cabaniss at 880.

In this case, Lynch has made impermissible legal conclusions by merely opining that "excessive force" was used on the Plaintiff, that there is evidence of "deliberate indifference" and that there was a "history of abuse." See Rule 26 Report (DN 122-2). Lynch's use of legal terminology in his opinions further evidence that his opinions are impermissible legal conclusions. See Smoger v. Enke, 874 F.2d 295, 297 (5th Cir. 1989) (finding it was not an abuse of discretion for the lower court to disallow testimony of an expert who made conclusions as to "negligence," "proximate cause," and "gross negligence"). Thus, all of Lynch's opinions are irrelevant legal

conclusions that will not assist the trier of fact and therefore should be excluded.

## V. REQUEST NOT TO FILE A SEPARATE MEMORANDUM OF AUTHORITIES

Due to the nature of this Combined Motion and Memorandum of Authorities, Defendant respectfully requests that the requirement of a separate Memorandum of Authorities be waived.

## VI. CONCLUSION

Lynch's education, experience and case consultations indicate that he is not qualified to render the opinions he has attempted to provide. Further, his opinions amount to nothing more than impermissible legal conclusions which he is not qualified to render in the first place. Lynch has done none of the legwork necessary in order to opine on the topics in his Report, and merely gives a "say so" based upon his incompatible "experience". His testimony is a textbook example of the type that must be precluded under Daubert, Kumho Tire, and the Federal Rules of Evidence. Plaintiff has failed to bear his burden and Defendant would request that Lynch's Report and testimony be excluded. Lastly, and to the extent the Court concludes that any of Lynch's opinions are admissible, the probative value of is substantially outweighed by the danger of unfair prejudice to the Defendant, and should be excluded. See Fed. R. Evid. 403, *supra*.

Respectfully submitted, this the 17th day of October, 2008.

        **HARRISON COUNTY SHERIFF'S DEPARTMENT AND SHERIFF GEORGE PAYNE, JR., IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, Defendant**

        **BY:   DUKES, DUKES, KEATING & FANECA, P.A.**

        BY:   */s/* Cy Faneca
                CY FANECA, MSB #5128

**DUKES, DUKES, KEATING & FANECA, P. A.**
CY T. FANECA, MSB #5128

JON S. TINER, MSB#101733
2909 13TH Street, Sixth Floor
Post Office Drawer W
Gulfport, Mississippi  39502-0680
**Telephone**:    (228) 868-1111
**Facsimile:**    (228) 863-2886

## CERTIFICATE OF SERVICE

I, CY FANECA, do hereby certify that I have this day delivered, via United States Mail, postage fully pre-paid, a true and correct copy of the above and foregoing pleading to the following:

Counsel for Plaintiff:

Woodrow W. Pringle, III, Esquire
2217 Pass Road
Gulfport, MS 39501

Counsel for Harrison County:

Joseph R. Meadows, Esquire
Post Office Drawer 550
Gulfport, MS   39502

Counsel for Health Assurance

Robert H. Pedersen
Walter T. Johnson
P.O. Box 650
Jackson, MS 39205

This, the 17th  day of October, 2008.

_/s/ Cy Faneca_
Cy Faneca