UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

KASEY D. ALVES                                                    PLAINTIFF

VERSUS                                    CIVIL ACTION NO. 1:06cv912LGJMR

HARRISON COUNTY, MISSISSIPPI, BY AND
THROUGH THE BOARD OF SUPERVISORS, ET AL.          DEFENDANTS

**DEFENDANTS', HARRISON COUNTY SHERIFF'S DEPARTMENT AND GEORGE H. PAYNE,
JR., IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56 ON SEVERAL GROUNDS
INCLUDING QUALIFIED IMMUNITY**

_____COMES NOW Defendant, Sheriff George Payne, Jr., in his individual and official capacity as

Sheriff of Harrison County, also referred to as the Harrison County Sheriff's Department, by and

through his attorneys of record, and files this his Memorandum of Authorities in Support of his Motion

for Summary Judgment pursuant to Fed. R. Civ. P. 56 on several grounds including Qualified Immunity

and in support of said Motion would show unto this Court the following:

## I.  BACKGROUND

**A.      Procedural History and Allegations**

The Complaint in the matter subjudice is the Second Amended Complaint filed October 18,

2007. The only remaining Defendants are Harrison County, Mississippi, George Payne, Jr., and

Harrison County Sheriff's Department. Plaintiff has previously amended his Complaint and dismissed

all individual deputies.  Health Assurance was dismissed on July 17, 2008.

In the Second Amended Complaint, Plaintiff alleges the following claims: Section 1983 and 14th

Amendment Excessive Force and Conspiracy Claims, and Official Capacity Claims (custom/policy).

Plaintiff claims  Defendants are liable to him for injuries sustained in an incident between himself and

Harrison County correctional officers, which resulted in Plaintiff being restrained in the restraint chair

for approximately nine hours on January 7, 2006 at the Harrison County Adult Detention Center.

(Comp. ¶ 7-9)  Plaintiff does not allege that  Defendant Payne was present or participated in the alleged use of excessive force, but rather that there were continuous allegations of excessive force made prior to the date of this incident and no action was taken. (Comp. ¶12) With respect to the conspiracy claim, Plaintiff alleges  "deputies, supervisors and the warden," not Defendant Payne, conspired with each other to assault and intimidate detainees and thereafter "concealed and covered up" said assaults. (Comp. ¶13)

Plaintiff's allegations against Defendant Payne are contained in paragrahs15, 16, and 17 of the Complaint.  Plaintiff specifically alleges that during the five-year period between 2001 and January 7, 2006, "there existed a persistent wide spread practice of deputies, supervisors and the warden assaulting inmates/detainees and to cover up the assaults," and it was "so common and routine as to constitute a custom that fairly represents the Harrison County, Mississippi/Harrison County Sheriff's Department policy";  Sheriff Payne  had "actual and/or constructive knowledge of the custom "but did nothing to remedy it; and Plaintiff was injured as a proximate result of that policy.  (Comp. ¶15)  Plaintiff claims there was a "complete failure to properly supervise the deputies/officer and warden involved."(Comp. ¶15) Plaintiff further alleges that for the purposes of injuring him, the  Sheriff's Department/George Payne willfully, wantonly, intentionally, and sadistically "violated the constitutionally imposed duty of care toward individuals who are in the custody of the state" and "violated a duty to protect Plaintiff from harm..." (Comp. ¶ 16-17)

Although the caption of Plaintiff's Complaint does not state in what capacity Defendant Payne is being sued,[1] counsel for Plaintiff has confirmed that Plaintiff is not alleging any claims against

---

[1]No case law from the Fifth Circuit Court of Appeals which directly ruled in this regard has been found; however, several other federal circuits require 1983 plaintiffs to plead specifically that a suit for damages is brought against a state official in his individual capacity. See  Wells v. Brown, 891 F.2d 591, 592-92 (6th Cir. 1989), Nix v. Norman, 879 F.2d 429 (8th Cir. 1989),Charon v. Picano, 811 F. Supp. 768, 771-72 (D.R.I. 1993)(emphasis added), and  Atchison v. District of Columbia, 73 F.3d 418, 427 (D.C. Cir. 1996). However, the Supreme Court states that when the complaint is not specific, the court should look

Defendant Payne in his individual capacity. (See Ex. "A" Corr. to Plf's Counsel) Consequently, Defendant Payne hereby moves for Partial Summary Judgment on all potential claims against him in his individual capacity. However, due to the nature of the Complaint, if individual capacity claims are later asserted, Defendant Payne is entitled to qualified immunity and reserves the right to address such claims and the defense of qualified immunity. In regard to the Defendant Harrison County Sheriff's Department, there is no such separate and distinct legal entity; therefore, the Harrison County Sheriff's Department should be dismissed as a matter of law.[2]

**B.    Factual Background**

On January 7, 2006, at approximately 4:30 a.m., Plaintiff was arrested by Biloxi Police Officers on the premises of the Imperial Palace Casino and charged with public intoxication, trespassing, and disorderly conduct due to Plaintiff's unruly behavior and intoxicated state. (See Ex. "B1", Arrest Rpt.) This arrest was preceded by Plaintiff's consumption of an excessive amount of alcohol, more specifically, at least four shots of straight Jack Daniels, and his belligerent and combative behavior with both patrons and security personnel at the Imperial Palace Casino. (See Ex. "C" - Plf.'s depo., T. 45, L. 11- T. 46, L.7; T. 47, L. 24 - T. 51, L. 10) Biloxi police officers were called as a result of Plaintiff's refusal to exit the casino after instigating an argument with another patron at a bar in the casino. (See Ex. "C"- T. 48, L. 1 - T. 49, L. 14) Plaintiff persisted in his threatening and unruly behavior and re-

---

to the course of proceedings to determine which capacity the official is sued. <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 (1985).

In the original Complaint, Plaintiff lists numerous defendants in their individual and official capacities but never makes this assertion for Defendant Payne in the Complaint nor the subsequent amended complaints. Additionally, paragraph 13 of the Complaint states "the Defendant, George Payne, is the elected Sheriff of Harrison County, Mississippi, vested with the responsibilities and authority to hire, train, and supervise deputies. He establishes policies and procedures and enforces the policies and procedures adopted or otherwise implemented. ..." Moreover, all allegations against Defendant Payne are contained under the heading "CUSTOM/POLICY".

[2] *See* <u>Miller v. Choctaw County's Sheriff Dept., et al,</u> 2006 U.S. Dist. LEXIS 14649 (N.D. Miss. Mar. 13, 2006); <u>Andrews v. Dallas</u>, 2001, U.S. Dist. LEXIS 4050 (N.D. Tex.  Jan. 3. 2001); <u>Darby v. Pasadena Police Dept.</u>, 939 F.2d 311 (5th Cir. 1991).

entered the casino after the casino security guards had previously escorted him off the premises. (See Ex. "C" - T. 50, L. 1-9) Plaintiff was again evicted from the casino by security guards, who then called the Biloxi Police and requested that the Plaintiff be arrested. It is undisputed that Plaintiff was verbally aggressive and using profane language towards the Imperial Palace employees. (See Ex. "C" - T. 52, L. 17-22)

By Plaintiff's own admission, that evening Plaintiff drank an amount of alcohol that he could not tolerate and was drunk. (See Ex. "C" - T. 46, L. 6-15.) As a result of his extreme level of intoxication, Plaintiff admits that he cannot recall the details of the events that transpired the evening of his arrest; (See Ex. "C" - T. 50, L. 18-23) however, as evident from the police report, all objective observers described his behavior as being intoxicated and disorderly. The arresting officer's report indicates that the Plaintiff was "transported straight to county jail due to his disorderly condition." (See Ex. "B1", Arrest Rpt./Narr. Form)

Plaintiff arrived in the booking area of the Harrison County Adult Detention Center at approximately 5:00 a.m. and was placed against the wall adjacent to the holding cells and instructed to stay there per standard operating procedure. (See Exs. "D", Campbell's Aff.; "D2" - IA Rpt.; "D3" - Video; and "D4" - Teel Narr.) Plaintiff refused to comply with such orders and walked towards the booking counter, a fact which Plaintiff cannot dispute. (See Ex. "C" - T. 56, L. 11-17) Deputy Teel then placed Plaintiff in an escort position and placed him back against the wall. (See Exs. "D3" and "D4" - Video and Teel's Narr.) It is undisputed that Teel attempted to temper the situation by telling Plaintiff to "calm down". (Ex. H Crim. Trial Trans. T.899, L.5 - 8) According to Teel's narrative, Plaintiff then spit on Deputy Teel's pants leg, which was interpreted as an assault against his person, and then Deputy Teel utilized a defensive maneuver and took Plaintiff to the floor in a controlled manner. (See Ex. "D4" - Teel's Narr.) Plaintiff threatened Deputy Teel's life by stating that he had a

4

knife in his pocket and he would cut Teel's throat.  (See Ex. "D4" - Teel's Narr.)  It is undisputed that

Plaintiff was carrying a foldout pocket knife with a six-inch blade in his left rear pocket that evening.

(See Ex. "D4" - Teel's Narrative and "C" - T. 60, L. 5-15)  Due to Plaintiff's spitting, a pillow case was

used as a spit mask and it was removed  approximately 30 minutes later. (See Ex. "D3" Video  and Ex.

"H"Crim. Trial Trans. T.901, L. 22- T. 902, L.20)

     Once on the floor, Plaintiff continued to be combative, uncooperative, and cursing, causing Teel

to deliver a tactical swipe of O.C. Spray. (See Exs "D2", "D3" and "D4" - IA Rpt., Video, Teel's Narr.)

 It is further undisputed that Plaintiff was  decontaminated by Deputy Teel shortly thereafter. **(**Depo of

Plf. T. 59, L. 12)   Due to Plaintiff's continuous combative behavior and his kicking, Teel delivered a

defensive knee strike to a pressure point on Plaintiff's body known as the brachial plexus region. (See

Exs. "D4" - Teel's Narr. and "E" - Depo. of Hester T. 11, L. 12-15)  Since the officers could not restrain

the Plaintiff, Deputy Teel called for assistance and several officers, including Sergeant Collins,

responded and assisted in controlling Plaintiff.

     As corroborated by two eye witnesses, Plaintiff was combative, obviously intoxicated, hollering

profanities, and continued to kick, move his upper torso, and spit on officers as the officers attempted

to restrain him in the restraint wrap.  (See Ex. "E" Depo of Hester - T. 7, L 21-22 and T. 16, L.11-20;

and Ex. "F" - Aff. of Collins) Alves refused to comply with the deputies' verbal commands to stop

resisting and was combative, disorderly, and used profanity.  (See Ex. "F" - Aff. of Collins and Depo

of Hester - T. 14, L. 22 - T. 15, L. 4)   As Plaintiff continued to move, jerk, kick, and spit, Deputy Teel

was telling Plaintiff to calm down.  (Aff. of Collins) (See Video).  Due to Plaintiff's resistant and

combative behavior, deputies utilized technical arm bars and brachial plexus stuns against Plaintiff in

order to get him restrained.  (See Ex. "F" - Aff. of Collins)  It is undisputed by Plaintiff that he was non-

compliant and that he did not follow the booking officers orders while in the booking area, because he was drunk**.** (Crim. trial trans. T.898, L. 14 - 899 L.1)

Plaintiff was eventually secured in the restraint chair and placed in a nearby holding cell. (See Video)  Deputy Teel  routinely checked on Plaintiff until approximately 7:30 a.m., when Teel's shift ended.  Prior to leaving, Teel briefed Deputy Stolze on the incident involving Teel. (See Ex. "D5" - Stolze Narr.) Subsequently, neither Deputy Stolze nor Deputy Evans followed procedure with respect to the use of the restraint chair because neither of them checked on Plaintiff to loosen the restraints nor assured that  the restraints were not binding. (See Ex. "D2" , "D3" and "D5" - IA Rpt., Video, and Stolze's Narr.) At approximately 2:20 p.m., seven hours after Teel last checked on Alves, Deputy Stolze released Plaintiff from the restraint chair.  (See Ex."D3" - Video.)  At 7:45 p.m. on January 8, 2006, medical staff evaluated Plaintiff and Plaintiff's only complaint noted was that his right foot was numb. (See Ex. "B2" - Nurses Notes) It was noted that Plaintiff had a small scratch on his right shoulder, but the scratch appeared to be an old wound. Id.

The Plaintiff was released from the Harrison County Adult Detention Center on January 8, 2006. As a result of being restrained in the restraint chair for approximately  nine hours, Plaintiff suffered temporary kidney failure, rhabdomyolysis, and was treated with acute renal dialysis. (Plf's Comp.)  The Plaintiff's kidney failure and rhabdomyolysis have since resolved, and the Plaintiff is no longer under a doctor's care.  (See Ex. "H" - T. 881, L. 18-19)  However, it is undisputed that the only injury Alves received prior to being placed into the restraint chair was a bruised lip.  (See Ex. "H" - T. 883, L. 10-14) (See Ex. "C" - T. 90, L. 9-15)

 On January 12, 2006, Sheriff Payne directed Steve Campbell, Director of Professional Standards, to conduct an investigation of the Plaintiff's booking on January 7, 2006 and to also inform

the District Attorney's Office and the Federal Bureau of Investigations of this incident.  (See Ex. "D2"-IA Rpt. and Ex. "D" Aff. of Campbell )  A thorough and extensive investigation was conducted wherein the surveillance tape was reviewed, interviews of all officers present were conducted, and narratives and reports of the incident were analyzed. (See Exs. "D2"- "D6" - IA Rpt., Video, Teel Narr., Stolze Narr., and McMahan's Intv.) The facts derived from the investigation corroborate the above stated facts. An internal affairs report was issued on March 17, 2006, and concluded that no excessive force was used on the Plaintiff during the booking procedure; however, it was concluded that Deputies Stolze and Evans both violated Harrison County Adult Detention Center  "Use of Restraints" Policy for leaving the Plaintiff in the restraint chair for approximately seven hours without checking on the Plaintiff's restraints or his welfare.

The Harrison County Sheriff's Department had in place at all relevant times, Policies and Procedure Directives on  the use of force, use of spit masks, use of Oleoresin Capsicum Spray (OC spray), and the use of restraints.  (See Exs. "G5" - "G7" attached to Payne's Aff.) The Use of Restraints policy provided, in part, that restraints would be used as precaution when "necessary to control inmates exhibiting violent behavior" and are not to be used as a means of punishment.  The policy further provides that "restraints would not  be applied in a manner which caused undue physical discomfort, inflict pain, restrict blood circulation or breathing of the inmate."  The maximum amount of continuous time of restraint that may be applied to one individual is not to exceed four hours.  It is the official policy of the Harrison County Sheriff's Department that restraints will be checked for "excessive tightness a minimum of once every thirty minutes.  If a loss of circulation is detected, an adjustment will be made if necessary.  If an inmate complains of pain caused by restraints, the observing staff member will require an examination of the inmate from medical staff."  (See Ex. "G" Aff. of Payne)

7

An administrative hearing was held on April 3, 2006, and it was established that even after being informed that the Plaintiff was restrained in the restraint chair, Deputy Stolze failed to enter the holding cell wherein Plaintiff was restrained in the restraint chair, failed to check the restraint straps, and failed to maintain the appropriate log in violation of the aforementioned policy. (See Exs. "D5" and "D7" - Admin. Hearing Trans. and Stolze Narr.) Following the administrative hearing, Officers Evans and Stolze each had disciplinary action taken against them. Both officers were suspended for three days without pay and directed to attend remedial training on the use of restraints policy. (See Exs. "G1"- Discipline letters to Stolze and Evans)

## II. <u>LEGAL ANALYSIS</u>

**A.    Standard of Review**

A motion for summary judgment should be granted where: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. <u>See</u> <u>Howard v. City of Greenwood</u>, 783 F. 2d 1311, 1315 (5th Cir. 1986). However, to survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of <u>material</u> fact. <u>See</u> <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 247-48 (1986). A plaintiff confronted with a summary judgment motion may not rest on mere conclusory allegations. <u>See</u> <u>Dunlap v. City of Tupelo</u>, No. 1:95CV67-D, 1996 U.S. Dist. LEXIS 21333 *16, n.8 (N.D. Miss. Mar. 8, 1996). When a movant for summary judgment has met its burden in demonstrating no genuine issue of fact, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of fact for trial. <u>See id</u>. To avoid entry of judgment against it, the non-movant must bring forth significant probative evidence demonstrating the existence of a triable

issue of fact.  See Howard, 783 F. 2d at 1315.  If viewing all of the material facts alleged by Plaintiff

as true, he is not entitled to recover as a matter of law, then summary judgment in favor of Defendant

is appropriate.

**B.      Plaintiff Fails to State An Official Capacity Claim Against Sheriff Payne**

Claims against governmental agents or officers in their official capacities are essentially claims

against the governmental entity itself.  See Moore v. Carroll County, Miss., 960 F. Supp. 1084, 1087

n.3 (N.D. Miss. 1997). The suit is against the office that the employee holds and not the actual

employee.  See Kentucky v. Graham, 473 U.S. 159, 165 (1985).  Plaintiff's official capacity claims

against Sheriff Payne are in reality, claims against Harrison County, or the office of the Sheriff of

Harrison County.

Under the decisions of the Fifth Circuit, proof of municipal liability (official capacity claims)

sufficient to satisfy the United States Supreme Court decision in Monell v. Dep't. Of Social Sciences,

436 U.S. 658, 694, (1978), requires proof of three elements: a policymaker, an official policy, and a

violation of constitutional rights whose "moving force" is that policy or custom.  See Id., Piotrowski,

237 F. 3d 567, 578 ( 5th Cir. 2001,) Pineda, et al. v. City of Houston, No. 01-20189, 2002 U.S. App.

Lexis 8904, at *4 (5th Cir. May 9, 2002).  "Isolated, unconstitutional actions by municipal employees

will almost never trigger liability."  Id.  The three requirements for municipal liability outlined above

are necessary in order to distinguish between individual violations by local employees and those that

can be fairly attributed to conduct by the governmental entity itself.  See Piotrowski, 237 F.3d at 578

-79.  Municipal liability cannot be imposed on the theory of respondeat superior or for individual

unconstitutional acts of lower level employees.  See Board of Commissioners of Bryan County v.

Brown, 520 U.S. 397, 403 (1997).  Instead, the alleged constitutional violation must occur pursuant to

an official custom or policy in order for municipal liability to exist. See id.[3] Monell established a high threshold of proof in this regard by stating that the official policy must be the "moving force" behind the alleged violation. See id. at 580. An official policy cannot be inferred from a single unconstitutional act. See Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987); Whiting, 222 F. Supp. 2d at 816.

In addition, not only must the Plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. Piotrowski, 237 F.3d at 580. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. Peters v. City of Biloxi, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999).

In the case at bar, Plaintiff's claims are insufficient to establish official capacity §1983 liability. Plaintiff cannot demonstrate that he suffered a constitutional deprivation; but even if he could prove a constitutional violation, based upon the undisputed facts, Plaintiff cannot establish that it occurred pursuant to any policy, custom, or practice of the Harrison County Sheriff's Office and/or Harrison County; therefore, Defendant Payne is entitled to summary judgment as a matter of law.

## C.    PLAINTIFF FAILS TO ALLEGE A CONSTITUTIONAL VIOLATION

### 1. Excessive force

First and foremost, Alves' allegations contained in the Second Amended Complaint should be divided into two distinct incidents which allegedly resulted in the violation of his constitutional rights.

---

[3] A municipality cannot be held liable solely because it employs a tortfeasor, in other words, it cannot be held liable under section 1983 on a theory of respondeat superior. See Collins v. City of Harker Heights, Tex., 503 U.S. 115, 121 (1992). Thus, a local government may not be sued under section 1983 for an injury inflicted solely by its employees or agents.

The need to separate the two incidents is crucial in distinguishing the alleged injuries which resulted from each incident.   The first being the alleged use of excessive force by correctional officers prior to Alves being placed in the restraint chair.   The second is the incident involving the alleged misuse of the restraint chair which resulted in Alves remaining in the chair for approximately eight (8) hours, unattended, without loosening the restraint straps.

     a.    *Claim of excessive force prior to being placed in restraint chair*

It is undisputed that Plaintiff was brought in on the charges of trespassing and public intoxication and that he was a pretrial detainee at the time of the subject incident. (See Plf's. Depo. T.19, L.13-25) The Fifth Circuit has held that when examining excessive force claims by pretrial detainees, the appropriate standard is whether the measure taken inflicted unnecessary or unwanton pain and suffering, which depends upon whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. <u>Valencia v. Wiggins</u>, 981 F.2d 1440, 1446 (5th Cir. 1993)  Because there is often no evidence of the jail official's subjective intent, courts focus on certain objective factors suggestive of intent, such as (1) the extent of the injuries suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force  used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of the forceful response.  <u>See</u> <u>id</u>. at 1446-47.

In applying these factors to the present case, it is undisputed that the Plaintiff's injuries and resulting damages were caused by being confined in a restraint chair and unattended for approximately eight hours, not any of the events prior to this. Plaintiff has already admitted that his only injury from the events prior to being placed in the restraint chair was a bruised lip. (See Ex. "C"depo. T.89, L. 20 T.90, L.15 and Ex. "H"Trans. of crim. trial, T. 881, L. 3-12, T. 883, L. 6-14)  Plaintiff has previously

testified under oath as follows:

> Q:    What injuries do you have from being placed into the chair?
> A:    Before being placed in the chair?
> Q:    From the . . . in the process of being placed into the chair?
> A:    A bruised lip.

(Trans. of crim. Trial, pg. 883,  Ex. "H ")  As evident by the nurse's notes who examined plaintiff later

on the same day of the alleged assault, Plaintiff made no allegation of an injury to his mouth or any other

locations other than those he attributes to the incident with the restraint chair, i.e. a numbness in his right

foot. (See Ex. "B2" - Nurses notes.)  Furthermore, Plaintiff has previously testified that most of his

physical injuries were a result of the length of time he remained in the restraint chair, not the events

prior.  ( See Ex "H" T. 904 L. 11-14)

While the Supreme Court has held that a significant injury is not required for an excessive force

claim,  a plaintiff must show he has suffered at least *some injury*. See Jackson v. Culbertson, 984 F.2d

699 (5th Cir. 1993); Knight v. Caldwell, 970 F.2d 1430, 1432 (5th Cir. 1992).  The Eighth Amendment's

prohibition of "cruel and unusual" punishment, which is applicable to pretrial detainees' excessive force

claims,  necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided

that the use of force is not of a sort "repugnant to the conscience of mankind."  Jackson, 984 F.2d. at

700, (citing Hudson v. Miller, 112 S.Ct. 995, 1100 (1992)).

As stated by the Fifth Circuit Court of Appeal in Brown v. Lippard, 472 F.3d 384, 386-387  (5th

Cir. 2006), "this Circuit has found an injury insufficient to support an excessive force claim where there

is no physical injury, see, e.g., Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999), or where it is

extremely minor". See also Siglar v Hightower 112 F3d 191 (5th Cir. 1997)(holding an inmate's sore,

bruised ear lasting for three days was de minimis injury for purposes of 42 USCS § 1983 action, and

injury was insufficient to serve as basis for excessive force; Martin v Harrison County Jail, 975 F.2d 192

(5th Cir. 1992) (stating with respect to excessiveness of force used, inmate raised no fact issue sufficient to withstand summary judgment in 42 USCS § 1983 action where inmate was struck while guard was trying to prevent him from cutting his wrist in suicide attempt, and inmate did not allege that he was struck more than once or that blows were significant and some force was appropriate where guards were attempting to prevent suicide); _Hamilton v. Lyon,_ 74 F. 3d 99, 106 (5th Cir. 1996); Jackson v. Culbertson, 984 F.2d 699 (5th Cir. 1993)(find that the spraying of Jackson with the fire extinguisher was a de minimis use of physical force and was not repugnant to the conscience of mankind); Olson v. Coleman, 804 F. Supp. 148, 150 (D.Kan.1992) (finding a single blow to the head causing a contusion to be de minimis and not repugnant); (Candelaria v. Coughlin, 787 F. Supp. 368, 374 (S.D.N.Y.1992) (allegation of single incident of guard using force against inmate's throat which caused inmate to lose his breath.)

Although an unreported case, Lee v. Wilson, 237 Fed. Appx. 965, 966 (5th Cir .2007) is a case relevant to the case at bar.  In Lee an inmate alleged that a jailer violated his constitutional rights by using excessive force in denying him medical care.  The excessive force claim was based on an inmate's allegation that he suffered a busted lip that bled when a jailer closed a portal door through which food was passed into a cell and the inmate alleged he suffered headaches as the result of such injury.  The Fifth Circuit held that the excessive force and denial of medical care claims were properly dismissed because the injury was de minimus and the defendant's conduct was not repugnant to the conscience of mankind. _Id._

Therefore, the deputies' actions in the context of the Plaintiff's conduct, and the Plaintiff's alleged injury from this first incident do not rise above the de minimis level of imposition with which the constitution is concerned. Consequently, it is undisputed that Plaintiff is incapable of proving a

constitutional violation as it relates to this incident.

Furthermore, the narrative reports, surveillance tape, and the testimony of Alves make it abundantly clear that Alves would not submit to being processed into the jail without some amount of force being used to restrain him. Based on the undisputed facts listed alone, the amount of force used was that necessary to restrain him. Alves' testimony regarding his actions immediately prior to being booked into the HCADC clearly illustrate his demeanor and state of mind that evening. As he admitted in his deposition, Plaintiff was drunk and involved in an altercation with other casino patons, which were the reasons he was evicted from the Imperial Palace Casino and arrested shortly before the incident in booking occurred. (See Ex. "C", T. 50, L. 23; T. 48 L. 8-23) Even after Plaintiff was escorted out of the casino by security officers, he attempted to re-enter and security had to "basically escort [him] back out". (See . Ex "C" -T. 50, L. 1-9) By his own admission, Plaintiff was intoxicated at that time and too drunk to recall the details of the evening of his arrest. (See. Ex. "C", T. 50, L. 18-23)

As stated above, Plaintiff admits the fact he failed to comply with Deputy Teel's commands and that Deputy Teel told him to "calm down". The surveillance video also corroborated this fact. (See Ex. "D3") Additionally, it is undisputed that Plaintiff possessed a six-inch pocket knife at the time he was noncompliant and made comments and exhibited actions which were perceived as a threat by the officers involved. (See Ex. "C"- T. 60, L. 1-15 and Narr.of Teel) As established by the narratives, internal affairs reports, the surveillance video, and Plaintiff's own testimony, Plaintiff remained combative and resistant the entire time he was in the booking room until he was finally restrained in the restraint chair. Witnesses to this incident agree that Plaintiff was spitting, unruly, uncooperative and physically combative while Teel was attempting to restrain Plaintiff. (See Exs. "D2", "D5", "E", and "F") It is further undisputed that Deputy Teel and others made attempts to calm Plaintiff down before

using the next level of force in an attempt to restrain Plaintiff.

In <u>Fultz v. Whittaker</u>, 187 F. Supp. 2d 695 (W.D. Ky. 2001), the defendant police officers were attempting to arrest plaintiff pursuant to a report of a domestic disturbance. <u>See id</u>. at 699. The plaintiff, who was intoxicated and agitated, approached the officers in a manner they perceived to be belligerent and verbally abusive. <u>See id</u>. At one point, the plaintiff moved his hands in a manner one officer perceived to be a striking motion towards another officer. The officer grabbed the plaintiff's arm, told him that he was under arrest, and attempted to handcuff him. <u>See id</u>. Plaintiff resisted by locking his hands together in front of his chest, and one of the defendant officers pepper sprayed plaintiff in the face. <u>See id</u>. A struggle then ensued, during which one of the defendant officers placed the plaintiff in a choke hold, and plaintiff's neck was accidently broken. <u>See id</u>. at 699-700.

The district court granted defendant's motion for qualified immunity in part, dismissing the plaintiff's claims that the arresting officers had used excessive force by use of pepper spray, and that they had acted with deliberate indifference to his medical needs by not immediately summoning an ambulance. <u>See id</u>. at 710. In reaching its decision, the district court observed that "[a]s recently as 1997 the Sixth Circuit found that the use of pepper spray by a police officer attempting to take someone into custody is reasonable." <u>Id</u>. at 703. The district court found that the facts in the case before it were somewhat similar, and that the plaintiff was belligerent, ignored reasonable requests, and at least passively resisted arrest prior to the use of pepper spray. <u>See id</u>. Furthermore, <u>plaintiff presented no evidence that the pepper spray caused anything other than its intended temporary discomfort and disorientation</u>. <u>See id</u>. (emphasis added). Under the circumstances, a reasonable police officer could believe that the arresting officers' decision to use pepper spray was proper and certainly not excessive force. <u>Id</u>.

In this case, there is no question that Alves was behaving violently and would not cooperate in the booking process. Thus, the decision to utilize defensive maneuvers, the spit mask, and the OC spray in an effort to restrain Plaintiff was objectively reasonable. Furthermore, Defendant's expert's Ken Katsaris opined that Officer Teel's actions were objectively reasonable due to Plaintiff's kicking, spitting, and resistance. Katsarsis also concluded that it was objectively reasonable to use OC spray, even though Plaintiff was handcuffed to stop Plaintiff's aggression. Furthermore, Katsarsis opined that the use of a pillow case as a spit mask for the limited time was also objectively reasonable and an accepted jail practice. (See Ex. "I", Katsaris' Rpt., ¶ 2) Therefore, as it pertains to all events other than the use of the restraint chair, Defendant Payne moves for partial summary judgment on the basis that Plaintiff only suffered a de minimis injury, and excessive force was never utilized-thus no constitutional violation occurred.

   b.    Use of the Restraint Chair

With regard to the use of the restraint chair, Alves' allegations do not rise to the level of a constitutional violation. In <u>Fuentes v. Wagner</u>, 206 F.3d 335 (3d Cir. 2000), the Third Circuit Court of Appeals upheld the confinement of a pretrial detainee in a restraint chair for eight (8) hours after the detainee had physically resisted officers who were stripping his cell. <u>See id</u>. at 349. This was true even though the detainee was no longer a physical threat to himself or anyone else by the time his hands were cuffed and legs shackled.

<u>Fuentes</u> reemphasized that once the government exercises its authority to detain a person pending trial, it is entitled to employ devices that are calculated to effectuate this detention. <u>See id</u>. at 342. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, <u>even if they are discomforting</u>." <u>Id</u>. (emphasis

added).  Ensuring security and order within a jail is a permissible, non-punitive objective, whether the facility houses pretrial detainees or convicted inmates.  See id.  The Court concluded by restating the basic test that restraints or other restrictions do not constitute punishment so long as they are rationally related to a legitimate government purpose and are not excessive in relation to that purpose.  See id.

It is also significant that in Fuentes, plaintiff complained that there was no need to use the restraint chair because he was no longer resisting, and that the use of the restraint chair for eight (8) hours was too severe a response under the circumstances.  See id. at 346.  The Court responded that, assuming these allegations were true, at most, plaintiff established that the prison officials had overreacted to the disturbance he had caused.  Given the totality of the circumstances surrounding use of the restraint chair, any such overreaction would fall short of finding that the prison official acted maliciously and sadistically.  See id.

In the case at bar, there is no evidence that Plaintiff was placed in the restraint chair as a form of punishment.  Therefore, the issue is not that Plaintiff was placed in the restraint chair, but rather that he was left unattended for over eight (8) hours, in direct violation of the Sheriff's Department's policy, resulting in his injuries. As evident by the video and Stolze's own narrative, during the time Alves was restrained there was a shift change, Deputy Teel checked on Plaintiff and further advised Stolze and Deputy Evan that Alves had been placed in the restraint chair. It was Stolze and Evans that did not follow the HCADC Policy and Procedures Use of Restraints by leaving Plaintiff in the restraint chair approximately eight (8) hours without adhering to the policy and checking on Alves restraints or welfare, action for which both deputies were disciplined.  These acts alone amount to simple negligence and do not rise to the level of a constitutional violation. Defendant's expert, Ken Katsarsis, opined that the use of the restraint chair and the application of the straps was objectively reasonable, however, the

violation of the policy on the length of time Alves was confined to the chair without observation, monitoring, and loosening of the straps, after four hours of timed confined, was negligence on the part of the officers charged with this responsibility. As stated by Defendant's expert, "because of the verbal and physical aggression towards the officers, use of the restraint chair was objectively reasonable." Katsarsis found that the force used to both control Alves and place him in the restraint chair was objectively reasonable.  (See Ex. "I"Katsarsis Rpt. ¶ 3) Therefore, Plaintiff fails to state a claim for excessive force.

### 2. Conspiracy

Plaintiff makes a claim for conspiracy; however, he only alleges that deputies, supervisors, and the warden at the Harrison County Adult Detention Center were involved at this alleged conspiracy, not Defendant Payne.  In order to prove a conspiracy claim under §1983, the Plaintiff must establish "(1) the existence of a conspiracy involving state action and (2) a deprivation  of civil rights in furtherance of the conspiracy by a party to the conspiracy." Pfannstiel, et al. v. City of Maron, et al. 918 F.2d. 1178, 1187 (5th Cir. 1990).  A conspiracy claim is not actionable without an actual violation of §1983.  Id. Plaintiff's allegations in the Complaint are at best conclusory and insufficient to establish that a conspiracy even existed as it relates to Plaintiff's particular incident.  Plaintiff has already admitted that he does not have any personal knowledge of whether or not Sheriff Payne was involved in the alleged conspiracy nor does he have any knowledge of facts to support his claim for conspiracy.  (Plf's. Depo. T.86, L.4-10)  It appears that Plaintiff is relying on the criminal trial testimony of the previous guilty pleas and/or trial testimony in the U.S.A. v. Teel matter; however Plaintiff has not, and can not, established that there existed an agreement between anyone to physically assault Plaintiff, or that Plaintiff suffered an actual deprivation of constitutional rights as a result.

Additionally, Plaintiff alleges a conspiracy to "conceal and cover-up" the alleged assault of Plaintiff and other inmates, by failing to document uses of force, by creating false justifications for excessive use of force, by giving false statements, and by writing false, vague and misleading reports concerning excessive use of force. (Comp. ¶ 13) As previously and successfully submitted by Health Assurance, (See [DN] 128, 129, 149, and 190) there is legal authority that a conspiracy to "cover-up" or conceal evidence may form the basis for a § 1983 claim alleging violation of the constitutionally protected right of access to the courts as guaranteed by the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The two elements that are required for this type of claim is the loss of an opportunity to bring a civil action because of the cover-up and concealment of the evidence, and that the plaintiff has been denied a remedy because of such loss that cannot be brought as a result of the cover up and concealment of the evidence. Christopher v. Harbury, 536 U.S. 403, 412-416 (2002). In this case, Plaintiff can not establish that he has lost any civil action as a result of the alleged "cover-up" conspiracy, and the fact that Plaitniff is currently pursing the claims made herein, demonstrates that such right has not be lost. Therefore, Plaintiff alleged conspiracy to "cover-up" fails as a matter of law.

Furthermore, due to the fact that the conspiracy claims are against the Sheriff in his official capacity and Harrison County, and not the individual deputies involved in the incident, and since it is not alleged that Defendant Payne was part of this conspiracy, and the County cannot be held liable for this type of claim.  *See* Turner v. Upton County, Texas, 967 F.2d 181, 185 (5th Cir. 1992).

### 3.    **Failure to protect**

Plaintiff alleges that Defendant Payne violated a duty to protect him, however this is inconsistent with Plaintiff's assertion that he is only seeking relief against Defendant Payne in his official capacity. Notwithstanding this fact, Defendant would assert that Plaintiff has no evidence to support this meritless

claim since it is undisputed that at no time did Defendant Payne's action create or increase any danger to the Plaintiff, nor was Defendant Payne ever deliberately indifferent toward Plaintiff. (See Payne's Aff. Ex. "G")

A prison official cannot be found liable unless the official knows of and disregards an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The official in question "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (emphasis added). An official's failure to alleviate a significant risk that he should have perceived, but did not, does not meet this standard. See id. at 838. Prison officials are only liable for their failure to protect an inmate if they are deliberately indifferent to a substantial risk of serious harm. Adames v. Perez, 331 F.3d 508, 512 (5th Cir. 2003. Moreover, prison officials cannot be automatically held liable for the errors of their subordinates. See id. at 513. "We have made clear that vicarious liability is an untenable theory of recovery in a §1983 action." Id. (citing Thompson v. Upshur County, Tex., 245 F.3d 447, 459 (5th Cir. 2001)). Here, based on the undisputed facts Plaintiff has not alleged anything even approaching negligence on the part of Sheriff Payne, let alone the deliberate indifference, which would equate to the sort of abuse of government power the Fourteenth Amendment was designed to prevent. Plaintiff cannot show that Sheriff Payne was deliberately indifferent, therefore Plaintiff fails as a matter of law to sufficiently allege the violation of a constitutional right based on a failure to protect theory.

### 4.     **Failure to Supervise**

To the extent that Plaintiff's one line assertion in the Complaint (¶ 15) that officers and the warden were improperly supervised is a claim for supervisory liability, such claim is again contrary to Plaintiff's assertion of only seeking official capacity claims and also fails as a matter of law.

Supervisors may face liability wherein their inaction, including their failure to train or supervise their subordinates, amounts to gross negligence or deliberate indifference which is the proximate cause of a constitutional violation.  See Cantu v Rocha, 77 F.3d 795, 807 (5th Cir. 1996).  In the case at bar, there is no competent summary judgment evidence showing that Defendant Payne, was deliberately indifferent by either ignoring a known risk to Plaintiff, or failing to train or supervise the jailers at the HCADC.  To the contrary, HCADC had in place adequate policies and procedures to ensure that all officers were trained and adequately supervised.  (See Aff. of Payne Ex. "G")  Furthermore, there is no evidence to suggest that Teel or any other officer needed closer supervision.

**D.      PLAINTIFF CANNOT ESTABLISH THAT THERE EXISTED A POLICY, PRACTICE, OR CUSTOM, OF WHICH SHERIFF PAYNE WAS AWARE, THAT WAS THE MOVING FORCE BEHIND THE ALLEGED CONSTITUTIONAL VIOLATION.**

Even assuming Plaintiff could prove a constitutional violation, Plaintiff can not prove that the moving force of the violation was a policy, practice, or custom at the HCADC of which a policy maker was aware and deliberately indifferent to. It is undisputed that Sheriff Payne is the only policymaker at the Harrison County Sheriff's Department; (Aff. of Payne Ex. "G") however, no such policy, practice, or custom existed at the HCADC which caused Plaintiff's alleged constitutional violations.

In the Complaint, Plaintiff appears to be alleging that there existed a policy and/or custom of a widespread practice of using excessive force and to cover up the assaults, failure to supervise the officers and warden involved, and a failure to protect inmates.

> In Webster v. City of Houston,  the Fifth Circuit defined an "official" policy in part as: a persistent widespread practice of city officials or employees, which, although not authorized by official adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such policy must be attributable to the governing body of the municipality or to an official to who that body has delegative policymaking authority.  Actions of officers or employees of a municipality do not render the municipality liable under §1983 unless they

execute official policy as above defined.

Webster v. Houston, 735 F.2d 838, 841 (5th Cir. 1984). The court identified the standard to be applied

in these cases and held:

> . . . Under our standard this case turns on whether the City maintained a practice of allowing the use of excessive police force that was "a Persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employee. . . .

Id. at 842. [Emphasis added][4]

In the case at bar, Alves cannot produce any evidence supporting his allegation that at the time

of this incident there was a persistent widespread practice by employees of the Harrison County Sheriff's

Department using excessive force and covering up such assaults, as no such policy or custom exists or

existed. Plaintiff's basis for this assertion is the recent criminal conviction of a deputy (his direct

supervisor was acquitted) and the fact that a few deputies plead guilty in return for reduced sentences

for charges of assaulting, intimidating, or threatening detainees at the Harrison County Adult Detention

Center and conspiring to conceal and cover up these assaults. This alone is insufficient for Plaintiff to

meet his burden. Furthermore, the fact that only ten deputies were charged with these crimes, is evident

that this alleged conduct was not as widespread practice as the Plaintiff alleges.

Even if one assumes arguendo that there was in fact a policy or custom of using excessive force

or covering up such assaults, Alves would also have to show that George H. Payne, Jr. had actual or

---

[4]As stated in Bennett v. Slidell, 728 F.2d 762, 768 (5th Cir. 1984), in describing "custom or usage," the Supreme Court has used such phrases as "persistent and widespread . . . practices," "systematic mal administration" of laws, practices that are "permanent and well settled," and "deeply embedded traditional ways of carrying out . . . policy." The Court further stated that "in the context of the question of city liability for such persistent conduct of its employees, i.e., conduct that has become a traditional way of carrying out policy has acquired the force of law, the persistent conduct must be attributable to the source of policy or law of the city, its governing body". Id.

constructive knowledge of same, and that the custom was the moving force of violating Alves' constitutional rights, which Plaintiff cannot do.   The Complaint states that George H. Payne, Jr. had actual and/or constructive knowledge of the alleged policy or custom; however, it does not state the basis for such assertion.  Alves has not set forth any probative or admissible evidence supporting the assertion that George H. Payne had actual or constructive knowledge of any policy or custom relating to the use of excessive force or conspiracy to cover up said force.

Additionally, as it relates to the recent criminal conviction of the former deputies, the very nature of said deputies' convictions establishes that the Sheriff did not know and should not have known of the alleged events that took place.  As specifically stated in Plaintiff's Complaint, "the co-conspirators attempted to, and <u>did </u>conceal their assaults of detainees/inmates by failing to document uses of force, by creating false justifications for excessive use of force, by giving false statements, and by writing false, vague, and misleading reports concerning excessive use of force." (See ¶ 6 of Comp.) Furthermore, the public discussion and publicity of these deputies' acts only came to light after the guilty pleas, which was after the date of the subject incident.

To the contrary, Harrison County Sheriff's Office had in place at all relevant times reasonable and adequate policies regarding the use of force, use of spit masks, use of OC spray, use of restraints, health care, internal affairs and investigations, and other applicable policies which ensured  the health and safety of both the inmates and officers. (See Policies attached to Sheriff Payne's Affidavit as Exs. "G2" through "11")  These policies are both reasonable and comport with the national recognized standards of care.  (See Defendant's expert opinion as Ex. "I")   Furthermore, as Sheriff Payne also states in his affidavit, the official policy of the Harrison County Sheriff's Office and the Harrison County Adult Detention Center was at all relevant times to provide a safe and secure environment, not

only for inmates, but also for officers and the general public.  (See Ex. "G")

Moreover, with respect to a section 1983 claim for an alleged custom or policy of inadequate supervision, a plaintiff must prove two elements: (1) the municipality must have <u>consciously</u> enacted a policy reflecting deliberate indifference to the constitutional rights of its citizens, and (2) the municipality must be the moving force behind the constitutional violation.  <u>See</u> <u>Peters v. City of Biloxi</u>, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999)(emphasis added)(citing <u>Snyder v. Trepagnier</u>, 142 F.3d 791 (5th Cir. 1998)).  Municipal liability for inadequate training and supervision "imposes on the plaintiff an extremely heavy burden." <u>Id</u>. Only in limited circumstances can a municipality be held liable for a failure to train or supervise its police officers.  <u>See</u> <u>id</u>. Proof of a single violent incident ordinarily is insufficient to hold a municipality liable for inadequate training or supervision, and the plaintiff must demonstrate at least a pattern of <u>similar</u> incidents in which citizens were injured to establish the official policy requisite to municipal liability. <u>See</u> <u>id</u>.  (emphasis added) (quoting <u>Snyder</u>, 142 F.3d at 795). Inadequate training or supervision of police officers can be characterized as the cause of a constitutional tort if, and only if, the failure to train or supervise amounted to deliberate indifference to the rights of persons with whom the police come into contact.  <u>Collins v. City of Harker Heights</u>, Tex. 503 U.S. 115, 123-124 (1992).  The Plaintiff here must show that the failure to supervise reflects a "deliberate" or "conscious" choice by the Sheriff to endanger constitutional rights.  <u>See</u> <u>id</u>.[5]

Plaintiff's allegation at most is failure to supervise; <u>not</u> failure to train.  The Sheriff's

_____

[5] "[M]erely identifying inappropriate behavior by municipal employees, standing alone, will not support a Section 1983 claim against a municipality.  To do so would be tantamount to holding the municipality liable solely for its employees' actions.  To avoid that impermissible result, [a] plaintiff must show more.  First, there must be recurring situations presenting an obvious potential for constitutional violation at issue.  Second, the violation must be a plainly obvious or highly predictable consequence of the failure to train or supervise." <u>Jacobs v. City of Port Neches</u>, 7 F.Supp. 2d 829, 834  (E. D. Tex., 1998)(citing, <u>Board of County Commissioners of Bryan County v. Brown</u>, 520 U.S. 397, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997)).

Department had adequate policies and procedures in place to ensure the safety and security of both the Harrison County Adult Detention Center, the officers and the inmates. (See Exs. "G2" - "G11") Further, the Sheriff Department had in place adequate policies and procedures to ensure all officers were properly trained and supervised.  Defendant Payne properly supervised all deputies at the Harrison County Adult Detentions Center.  At no time was Defendant Payne deliberately indifferent to any detainees rights, including the Plaintiff.  (See Ex. "G")

There were in existence adequate policies addressing the particular areas relevant to Plaintiff's Complaint, and the mere fact that the non-policy-making officers involved in the subject incident may have acted inconsistently with those policies in one particular occasion does not automatically establish an official capacity §1983 violation.  Assuming all of Plaintiff's allegations are true, at worst, all Plaintiff has demonstrated is an isolated, individual act by lower level employees on one occasion.  This is insufficient to trigger constitutional liability on the Sheriff.

Here, Plaintiff has produced no proof that there was a history of past similar incidents of which the Sheriff was or should have been aware, which should have placed the Sheriff's office on notice of the need to develop or revise policies regarding the use of force, use of restraints, use of pepper spray, or other similar policies.  As stated earlier herein, Plaintiff cannot demonstrate the deprivation of a constitutional right in the first place, nor can Plaintiff point to the existence of any governmental policy, custom, or practice which actually <u>caused</u> a constitutional deprivation, or that there was a policy adopted with objective deliberate indifference to Plaintiff's constitutional rights.

**E.    In the Alternative, Defendant is Entitled to Partial Summary Judgment Dismissing all Claims for Punitive Damages.**

Punitive damages are not recoverable against a municipality for an official capacity section 1983 claim.  As it is undisputed that Plaintiff's only federal claims in this case are official capacity claims,

punitive damages are not available to him.  This is because punitive damages are not allowed against a municipality under 42 U.S.C. §1983.  See Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981), Dillon v. Jefferson County, Tex., 1997 U.S. Dist. LEXIS 12090, *15(E.D. Tex. Mar. 17, 1997). Therefore, Sheriff Payne respectfully moves this Honorable Court to enter summary judgment dismissing any and all claims for punitive damages.

### III. CONCLUSION

In summary, as an essential element of all of Plaintiff's federal claims against Sheriff Payne, in his official capacity, he must first establish the deprivation of a constitutional right.  This he is unable to do.  However, assuming arguendo that the Plaintiff could establish a material disputed issue as to a constitutional violation, he cannot establish a material disputed issue showing that the moving force of the violation occurred pursuant to a policy, custom, or practice of Harrison County or the Sheriff's Office; thus barring any official capacity claim against either Sheriff Payne or Harrison County. As a matter of law, Plaintiff's allegations of violation under section 1983 should all be dismissed with prejudice. Based on the foregoing, Defendant George Payne, Jr., in his Official Capacity as Sheriff of Harrison County, hereby files this his Memorandum of Authorities in Support of his Motion for Summary Judgment, and respectfully requests that, upon all issues having been duly considered, this Honorable Court will grant his Motion and dismiss this Civil Action with prejudice and with costs. Defendant prays for such other and further relief as this Honorable Court deems appropriate.

Respectfully submitted, this the 17th  day of October, 2008.

**SHERIFF GEORGE PAYNE, JR., IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES AND HARRISON COUNTY SHERIFF'S DEPARTMENT, Defendant**

**BY:    DUKES, DUKES, KEATING & FANECA, P.A.**

BY:    */s/Cy Faneca*
       CY FANECA, MSB #5128

## **CERTIFICATE OF SERVICE**

I, CY FANECA, do hereby certify that I have this day delivered, via United States Mail, postage

fully pre-paid, a true and correct copy of the above and foregoing pleading to the following:

Counsel for Plaintiff:

Woodrow W. Pringle, III, Esquire
2217 Pass Road
Gulfport, MS 39501

Counsel for Harrison County:

Joseph R. Meadows, Esquire
Post Office Drawer 550
Gulfport, MS   39502

This, the 17th day of October, 2008.

*/s/ Cy Faneca*
Cy Faneca

**DUKES, DUKES, KEATING & FANECA, P. A.**
CY T. FANECA, MSB #5128
JOE GEWIN, MSB#8851
HALEY N. BROOM, MSB#101838
2909 13TH Street, Sixth Floor
Post Office Drawer W
Gulfport, Mississippi  39502-0680
**Telephone**:      (228) 868-1111
**Facsimile:**      (228) 863-2886