JAN 1 2 1995

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

SOUTHERN DIVISION

UNITED STATES OF AMERICA,     )
    Plaintiff,               )
                              )
v.                            )   Civil Action Number:
                              )   1:95cv5GR
HARRISON COUNTY, MISSISSIPPI, et al.,  )
    Defendants.              )

CONSENT Judgment ~~DECREE~~

PLAINTIFF'S EXHIBIT "7"

TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 3 |
| II. | DEFINITIONS | 3-4 |
| III. | BACKGROUND | 4 |
| IV. | SUBSTANTIVE PROVISIONS | 4-16 |
| | A. Security and Supervision | 4-6 |
| | B. Access to Courts | 6-10 |
| | C. Medical Care | 10-12 |
| | D. Mental Health Care | 12-16 |
| | E. Suicide Prevention | 12-17 |
| V. | TIMING OF COMPLIANCE | 16 |
| VI. | GENERAL PROVISIONS | 16-18 |

I. INTRODUCTION

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. section 1345.

2. Venue in the Southern District of Mississippi, Southern Division, is appropriate pursuant to 28 U.S.C. section 1391(b).

3. The United States has met all pre-filing requirements stated in the Civil Rights of Institutionalized Persons Act, 42 U.S.C. section 1997, et seq.

II. DEFINITIONS

4. "Plaintiff" shall refer to the United States of America.

5. "Defendants" shall refer to Harrison County, Mississippi, the Sheriff of Harrison County, the Warden or Chief Correctional Officer of the Harrison County Jail, the members of the Harrison County Board of Supervisors, and their agents and successors in office.

6. The acronym "HCDC" shall refer to the Harrison County Jail, formally known as the Harrison County Detention Center. "HCDC" shall refer to the main Adult Detention Center located at 10451 Larkin Smith Drive.

7. The terms "inmate" or "inmates" shall refer to one or more individuals sentenced to, incarcerated in, detained at, or otherwise confined at either the existing jail at 10451 Larkin Smith Drive or any facility constructed either to replace the existing jail or to provide additional housing for the jail.

8. The term "special needs inmate" shall refer to those inmates who are suicidal, mentally ill, mentally retarded, under

the influence of alcohol or other substances, or otherwise a danger to themselves or others.

III. BACKGROUND

9. On May 3, 1993, pursuant to its authority under the Civil Rights of Institutionalized Persons Act (CRIPA), 42 U.S.C. { 1997 et seq., the United States formally notified Harrison County officials of its intent to investigate conditions of confinement at the Harrison County Jail.

10. On June 23-25, 1993, also pursuant to CRIPA, the United States toured HCDC with expert consultants in the field of penology, correctional health care and suicide prevention. On September 9, 1993, the United States issued a report/findings letter based on its investigation and expert tour which found that HCDC operates in violation of the inmates' constitutional rights.

11. The parties to this Decree recognize the constitutional rights of the inmates confined at HCDC. In order to avoid litigation concerning the constitutionality of the care and confinement of inmates at HCDC, the parties agree to the provisions set forth in this Consent Decree.

IV. SUBSTANTIVE PROVISIONS

A. Security and Supervision.

Defendants shall provide a safe and secure living environment to all inmates housed at HCDC. To this end, Defendants shall undertake corrective measures in each of the following areas.

12. **Staffing.** Defendants shall ensure that, at each of the four inmate housing units, there are no less than two (2) officers on duty for all shifts -- one officer stationed in the unit control room and one officer posted as a rover for the unit. In addition, the facility shall have at least one officer on duty on all shifts in the facility's main control center. Further, there shall be at least one (1) female officer on duty on all shifts, whose responsibilities shall include responsibility for supervising and attending to the needs of the female inmates housed at HCDC. Utilizing a relief factor, Defendants shall employ sufficient numbers of officers to maintain these required staffing levels at all times, including during periods of staff illness, vacation or other leave of absence.

13. **Staff training.** Defendants shall continue to implement their comprehensive jail officer training program, to include at minimum 80 hours of pre-service or orientation training to officers (40 hours of which shall be prior to an officer being independently assigned to any particular post), and an additional 40 hours of in-service training each year thereafter. Such program shall entail, at minimum, training and testing in the following areas: security and search procedures, use of force regulations and tactics, supervision of inmates, report writing, inmate and staff rules and regulations, rights and responsibilities of inmates, all emergency procedures, interpersonal relations, social/cultural life styles of the

inmate population, communication skills, training in first aid and the use of CPR, and training in HIV related issues.

14. Inmate disciplinary practices. Unless and until Defendants appropriately remodel cell 148, Block B section F (HCDC's "strip cell") -- e.g., installing a bunk, standardized toilet and sink -- Defendants shall not use this cell for confinement of inmates.

15. Control of dangerous materials/utensils. Defendants shall continue to implement appropriate procedures for securing and safeguarding dangerous materials/utensils in the kitchen area (e.g., large kitchen knives) and dangerous materials in the facility's medical unit (e.g., needles, syringes, and medications). Such procedures shall include identification of dangerous or potentially dangerous materials, proper storage of the materials in locked areas, and a system of inventory with routine counting of the identified materials.

B. Access to the Courts.

Defendants shall provide HCDC inmates with effective and meaningful access to the courts. To this end, Defendants shall:

16. Law library. Defendants shall provide inmates with reasonable access to updated legal materials consisting of at least the following materials:

    a) One set of the Mississippi Code Annotated
    b) One set of the United States Code Annotated
    c) One set of West's Federal Practice Digest
    d) One set of the Mississippi Digest

e)  One volume Black's Law Dictionary

f)  One volume of current Mississippi Rules of Court

g)  One volume Federal Civil Procedure Handbook (West's Federal Rules of Civil Procedure)

h)  One volume Federal Criminal Procedure Handbook (West's Federal Rules of Criminal Procedure)

i)  Handbook in Criminal Law (latest edition), LaFave and Scott

j)  Prisoners' Self-help Litigation Manual (latest edition), Manville D., and Boston, J.

k)  Constitutional Rights of Prisoners (latest edition), Palmer, J.

l)  Constitutional Rights of the Accused (latest edition), Cook, J.

m)  One general guide to legal research "How to Find the Law"

n)  One set of West Publishing Company standard forms

o)  A list of mailing addresses of all local government, state or federal courts with jurisdiction over the inmates

p)  Copies of any current decrees or other court orders which pertain to operations or conditions of confinement at the jail

17. The aforesaid publications shall be made available to the inmate upon his or her visit to the HCDC law library, which shall be open at least eight hours per day, five days per week.

The library shall be suitably accommodated for inmates to conduct manual legal research when direct access is provided. In addition to the foregoing volumes, there shall be provided through the assistance of a trained paralegal professional, on site at the Law Library at least eight hours per day, five days per week, a computer printer combination with CD-ROM capability by which the inmate, upon request, may obtain information set forth in the following publications which will be purchased on CD-ROM:

- q) United States Supreme Court Reporter
- r) Federal Reporter (1980 to date)
- s) Federal Supplement (1980 to date)
- t) Southern Reporter (Mississippi cases)
- u) Federal and U.S. Supreme Court Shepard's Citations
- v) Until available on CD-ROM, hardbound volumes of the Shepard's Mississippi Citations will be provided.

18. Inmates will gain access to the law library and the paralegal by completing a request form entitled "Harrison County Sheriff's Department Legal Research Request," attached as Appendix A. The Defendants shall provide a sufficient number of request forms to each area of the HCDC in order that the request forms are available to any inmate who requests one. HCDC staff shall forward completed request forms to the paralegal by no later than the next business day. The paralegal shall, within a reasonable amount of time (<u>e.g.</u>, five days) of receipt of the completed request form, either: 1) provide the inmate with

copies of relevant materials, which may be taken back to the inmate's cell, from preliminary research of the issue presented; or 2) provide the inmate with direct access to the law library. The paralegal shall also provide assistance to inmates in his or her preparation of legal documents or pleadings. Legal materials from the CD-ROM library shall be provided via copies. Any copies of cases will, upon lapse of a reasonable amount of time in the possession of the inmate, be returned to the law library for filing and for potential future use by other inmates presented with the same issue of law.

19. Illiterate inmates shall be provided meaningful access to the courts through the facility paralegal. Such inmates shall request an interview with the paralegal orally through HCDC staff, who shall relay such request directly to the paralegal; whereupon the paralegal shall, within a reasonable amount of time, personally interview the inmate, ascertain the inmate's research request, and assist the inmate in obtaining relevant legal materials and filing meaningful legal documents, should such documents need to be filed.

20. In the event that an inmate is facing a specific court deadline or statute of limitation, the Defendants shall make reasonable efforts to allow the inmate additional access to the legal materials in the HCDC library.

21. The Defendants shall also provide to any inmate a reasonable amount of paper, envelopes, and writing implements -- and sufficient postage for indigent inmates -- regarding legal

correspondence with attorneys, legal services or assistance organizations, and courts. The Defendants shall provide inmates sufficient photocopying of legal documents to satisfy court procedural requirements and to permit the inmate to retain a single copy of each document. The Defendants shall provide adequate notarial services to inmates.

22. At no cost to the Defendants, inmates shall be permitted to purchase, receive, and maintain in their cells a reasonable amount of soft-bound law books and other legal research materials, to such extent not exceeding legitimate fire safety and security concerns.

C. Medical Care.

To ensure adequate medical care is provided to inmates housed at HCDC, Defendants shall provide medical attention and services in accord with currently accepted correctional health care standards. To this end, Defendants shall undertake corrective measures in the following areas.

23. Medical staffing. Defendants shall enhance the current medical care staffing level by hiring or contracting for the services of a full-time licensed and qualified medical professional, e.g., a registered nurse, to ensure adequate on-site services are provided.

24. Screening. Defendants shall continue to ensure all inmates are medically screened by appropriately trained staff and that all screening forms indicating a medical condition are

reviewed by a qualified medical professional and become part of the inmate's medical record.

25. **Sick call.** Defendants shall continue to ensure that sick call for inmates is regularly scheduled and conducted by a physician at least three times a week.

26. **Physician rounds.** Defendants shall continue to ensure that a physician conducts routine rounds of the inmate housing areas, so that each housing unit is visited by the physician at least one (1) time a month.

27. **Tuberculosis (TB).** In all cases of inmates confined at HCDC for seven days or more, Defendants shall continue their current practice of administering a PPD test for TB with the results of the test forwarded immediately to the facility physician. If the test result is positive, the inmate shall be immediately scheduled for a chest x-ray, with appropriate medical care and attention including isolation to be provided thereafter as indicated.

28. **Medication storage.** Defendants shall continue to ensure that all medications, particularly injectable medications such as penicillin and insulin, and all dangerous medical supplies are properly stored and maintained in a locked, secure area.

29. **Medication administration.** Defendants shall ensure that all officers who administer prescription medications to inmates are appropriately trained in medication distribution and in the observance and recognition of dangerous side effects.

30. Pharmacy. To ensure proper management of pharmaceuticals, Defendants shall contract with a pharmacist or other qualified professional to conduct quarterly reviews of drug management at HCDC.

31. Trustees in medical unit. Defendants shall ensure that inmate trustees have no access to inmate medical records, nor any degree of control over inmate access to medical services.

D. <u>Mental Health Care/Suicide Prevention.</u>

Defendants shall provide adequate mental health services to HCDC inmates, including adequate suicide prevention measures. To this end, Defendants shall undertake the following corrective measures.

32. Staffing. Defendants shall employ a Ph.D. psychologist to be present at the facility on at least a half-time basis. Further, a licensed psychiatrist will be available on call, as needed, for provision of such services as crisis intervention, diagnosing inmate/patients, medication prescriptions and renewals, and other consultation (on or off site), as appropriate.

33. Enhancement of services. Defendants shall enhance the regularity and continuity of mental health care services for inmates at HDC. Such enhancement shall include the facility psychologist's review of medical screening forms, assessment and evaluation of mentally ill and suicidal inmates, communication with a qualified medical professional to ensure appropriate inmate medication, and availability of a mental health care

provider on-call 24 hours a day, seven days a seek, for crisis intervention services. Such enhancement shall also include ensuring availability, either at HCDC or at a local hospital, of psychiatric beds when needed.

34. Suicide prevention program. Defendants shall develop and implement written policies and procedures on suicide prevention and the treatment of special needs inmates, which shall include, but not be limited to, the following:

    a) the appropriate housing of all special needs inmates;

    b) the establishment of two levels of supervision of special needs inmates -- "constant watch" and "close watch". Special needs inmates not identified as currently suicidal shall be assigned to "close watch" supervision and visually monitored by HCDC staff at regular intervals of not more than fifteen minutes; special needs inmates who are currently suicidal shall be assigned to "constant watch" supervision and, if not transferred to a local hospital, shall be housed in a medical unit or other appropriately safe environment, and shall be visually monitored at all times by a jail officer. Jail officers shall log all monitoring in a separate suicide watch book;

    c) the communication of information relating to special needs inmates between and among all HCDC staff members, between arresting and transporting

officers and HCDC staff, between HCDC staff and jail administration, and between HCDC staff and the special needs inmate;

d) the notification by HCDC staff to local or state mental health authorities, for informational purposes only, that a special needs inmate (except intoxicated) has been admitted to the Jail;

e) the notification to the special needs inmate's family (except those inmates incarcerated for intoxication) that he or she has been admitted to HCDC;

f) the assessment of all special needs inmates as soon as reasonably possible by a qualified mental health professional to assess the inmate's level of suicide risk;

g) the establishment of a mechanism by which HCDC staff will communicate with the facility health care providers regarding the status of potentially suicidal inmates or inmates who have recently attempted suicide;

h) the establishment of a mechanism by which HCDC staff will refer potentially suicidal inmates and inmates who have recently attempted suicide to the facility mental health care providers or other facilities for placement;

i) the documentation of all attempted and completed suicides and notification to jail administrators,

outside authorities and family members of all attempted and completed suicides;

j) the establishment of follow-up and administrative review procedures for all attempted and completed suicides, including the determination of what changes, if any, are needed in the Suicide Prevention Program;

35. Staff training. As part of the jail officer training program required by Section A., subpart 13, herein, Defendants shall ensure that each officer is adequately trained in recognizing common symptoms of mental illness, mental retardation, and suicidal behavior, and is trained in suicide prevention measures. Defendants shall further ensure that each officer is specifically provided, pre-service, with adequate suicide prevention training by a qualified mental health professional to include training regarding: proper officer response to a suicide or suicide attempt, including how to cut down a hanging victim and other first-aid measures; and the high-risk groups and periods for suicides and suicide attempts.

36. Screening. Defendants shall revise its medical screening form to include sufficient inquiry into suicide risk in accordance with professional standards. The mental health and suicide risk portion of the screening questionnaire shall be administered by health trained staff and reviewed by qualified medical or mental health personnel. All such screening forms shall be forwarded to the Medical unit.

37. Elimination of physical hazards. Defendants shall identify and eliminate all physical hazards, e.g., shower bars or bar grates covering lights, which present a serious risk to suicidal or potentially suicidal inmates.

38. Suicide prevention equipment. Defendants shall purchase and maintain in an area easily accessible to the cellblock appropriate rescue equipment, i.e., a rescue tool for rapid cutting of fibrous materials utilized in attempted hangings, disposable rubber gloves, a CPR pocket mask, and any other equipment Defendants deem appropriate, to ensure that staff can effectively intervene in the event of attempted suicide.

V. TIMING OF COMPLIANCE

39. Except where otherwise specifically indicated, the Defendants shall implement all provisions of this Consent Decree by no later than one year after the signing of the Decree.

40. The Defendants shall, every 90 days following the signing of this Decree, file with the Court and with copy to the United States a status report stating how the Defendants are complying with each requirement of this Order.

41. If Defendants fail to timely comply with the requirements of this Consent Decree, the United States shall have the right to seek additional relief from the Court.

VI. GENERAL PROVISIONS

42. During all times while the Court maintains jurisdiction over this action, the United States shall have unrestricted access to copies of all documents which relate to the

implementation of this Decree. The United States shall have unrestricted access to all records and recordings, and to all staff and facilities as necessary to address issues affected by this Decree.

43. The Defendants shall immediately explain the terms of this Decree to all HCDC staff members and other individuals providing services required by this Decree, in order to ensure that they understand the requirements of this Decree and the necessity for its strict compliance. All HCDC staff members and other individuals providing services required by this Decree shall sign a statement indicating that they have read and understood this Decree. Such statement shall be retained by the Defendants. The Defendants shall require strict compliance with this Decree by their respective employees, agencies, assigns, or successors.

44. The parties contemplate that at such time the Defendants have achieved compliance with the terms and objectives of this Consent Decree, and have maintained such compliance for a sustained period of one year or more, the parties shall jointly move this Court to vacate this Decree and to terminate the Court's jurisdiction over this action. Should Defendants believe that substantial compliance with the terms and objectives of this Consent Decree have been accomplished at any time before this date, Defendants may unilaterally move this Court for termination of this litigation. Defendants shall bear the burden regarding any such unilateral motion to demonstrate by full and convincing

evidence that Defendants have fully complied with all requirements of this Decree.

Agreed to by:

COUNSEL FOR THE UNITED STATES:

Date: _____, 1994

DEVAL L. PATRICK
Assistant Attorney General
Civil Rights Division
United States Department of Justice

J. BRADLEY PIGOTT
United States Attorney
Southern District of Mississippi

ARTHUR E. PEABODY, JR.
Chief
Special Litigation Section

TIMOTHY R. PAYNE
Attorney
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
Post Office Box 66400
Washington, D.C. 20035

COUNSEL FOR DEFENDANTS-HARRISON COUNTY
AND HARRISON COUNTY BOARD OF SUPERVISORS:

Date: *October 10*, 1994          *Joseph R. Meadows* (signature)
                                  JOSEPH R. MEADOWS
                                  Meadows, Riley, Koenenn & Teel
                                  1720 23rd Avenue
                                  P.O. Drawer 550
                                  Gulfport, MS  39502

It is hereby Ordered, this 11th day *January*, 1995.

                                  (signature)
                                  UNITED STATES DISTRICT JUDGE