```
 1          (August 9, 2007, 9:02 a.m.)
 2              THE COURT:  Is the government ready to proceed?
 3              MS. KRIGSTEN:  Yes, we are, Your Honor.
 4              THE COURT:  Mr. Teel ready to proceed?
 5              MR. DAVIS:  Yes, sir, Your Honor.
 6              THE COURT:  Mr. Gaston ready to proceed?
 7              MR. WEBER:  Yes, Your Honor.
 8              THE COURT:  Very well.  Please bring in the jury.
 9          (Jury in at 9:03 a.m.)
10              THE COURT:  Good morning, ladies and gentlemen.  The
11   parties report that they are ready to proceed.
12       The government may call your next witness.
13              MS. KRIGSTEN:  Thank you, Your Honor.  The government
14   calls Rupert Lacey.
15                           RUPERT LACEY
16   was thereupon called as a witness for and on behalf of the
17   government and, having been duly sworn, testified as follows:
18                        DIRECT EXAMINATION
19   BY MS. KRIGSTEN:
20   Q.  Good morning.
21   A.  Good morning.
22   Q.  Will you please introduce yourself to the jury?
23   A.  Rupert Lacey, deputy director for Harrison County
24   Emergency Management.
25   Q.  What are the duties of your current position?
```

MARGARET WASMUND, RMR, CRR

PLAINTIFF'S EXHIBIT "6"

```
 1  were trying to do subject control.
 2     Q.  How did it feel?
 3     A.  Not pleasant.
 4     Q.  What effects, if any, did you have?
 5     A.  Closing my eyes, burning sensation, coughing.
 6     Q.  Okay.  Does OC spray have a calming effect?
 7     A.  Not that I'm aware of.
 8     Q.  Okay.  Have you ever seen OC spray have a calming effect?
 9     A.  I have seen OC not work on some of the population.  And
10  that's why we say it's about 80, 85 percent.
11     Q.  Have you ever seen OC spray calm someone down?
12     A.  No, ma'am.
13     Q.  Okay.  When were officers taught that OC spray could be
14  used at the Harrison County Sheriff's Department?
15     A.  In any situation that the officer needed to gain control
16  of an individual.  If the individual was loud and obnoxious,
17  that's not a -- not a reason to calm them down.  If they're
18  behind a door, you don't spray them.  If they were going to be
19  combative and fight with you, then that's one of your options
20  that you could use.
21     Q.  What if an officer wanted to discipline an inmate?
22     A.  No, ma'am.  It's not designed for that.
23     Q.  What if an inmate was being verbally belligerent?
24     A.  If he was not combative to you, you know, you -- we have
25  to just turn our cheek sometimes and listen to them be loud and
```

```
 1    individual, the product can come back on you very easily.
 2      Q.  Okay.
 3      A.  If you're in a closed space, then you can get product on
 4    you.
 5      Q.  And all of these things are principles that you taught in
 6    your training at the Harrison County Sheriff's Department?
 7      A.  Yes, ma'am.
 8      Q.  Now, would it be consistent with that training for an
 9    officer to spray a verbally belligerent inmate?
10      A.  We wouldn't.  If they're restrained or if all they're
11    doing is running their mouth, you wouldn't spray them.  There
12    is no just cause.
13      Q.  When were officers told they could use OC spray against a
14    handcuffed inmate?
15      A.  If a person is restrained, you don't want -- you only use
16    a force that is necessary.  In our training, if the person is
17    restrained, then you've got them subdued already.  You wouldn't
18    spray them.  Now, if they started kicking you or trying to get
19    away, then you would -- you would have to look at that option.
20      Q.  Okay.  Can you tell the jury what a tactical swipe is?
21      A.  A tactical swipe was developed in the mid-nineties --
22    early to mid-nineties for the correctional environment.
23    Because individuals are housed in smaller cell areas, it became
24    evident that you could not pull the spray and you would have
25    your three to seven foot optimum spraying distance.
```

1  So the tactical swipe is the officer is carrying the
2  product on his or her belt. It's still holstered in that belt.
3  They could lower their hands as they started to go into a
4  combative individual, spray it into the palm of their hand. At
5  the same time coming up, holding the hand up or swiping the
6  hand into the face, with their other hand pushing them back to
7  give them the distance as they spray and evade. So let the
8  spray take place -- it's a little bit slower. Let the spray
9  take place and then do subject control.
10  Q. Okay. And did you teach the Harrison County Sheriff's
11  Department officers to use the tactical swipe against
12  restrained individuals?
13  A. If they're restrained, then you wouldn't want to use those
14  tools.
15  Q. Okay. Are you familiar with spit masks?
16  A. I know what a spit mask is, yes, ma'am.
17  Q. Did you use spit masks during your OC spray -- or OC
18  training?
19  A. We never talked about a spit mask.
20  Q. Okay. And is it consistent with the training you provided
21  for an officer to spray OC spray in a spit mask?
22  A. That would not -- that would not be -- they're already
23  restrained. And that is a restraint. So you wouldn't want to
24  endure them to that.
25  Q. Okay. How soon after OC spray is used against an